**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**AT HARRISBURG**

|  |  |
|---|---|
| LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC SERVICES OF PENNSYLVANIA, LLC,<br><br>Defendant. | Civil Action No. 1:23-CV-00044-JPW |

**ANSWER TO COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES**
**BY DEFENDANT REPUBLIC SERVICES OF PENNSYLVANIA, LLC**

Defendant Republic Services of Pennsylvania, LLC, ("Defendant") by and through its attorneys Faegre Drinker Biddle & Reath, LLP answer the Complaint of Lower Susquehanna Riverkeeper Association ("Plaintiff") as follows:

1. The allegations in Paragraph 1 are legal conclusions to which no response is required.

2. The allegations in Paragraph 2 are legal conclusions to which no response is required.

**JURISDICTION AND VENUE[1]**

3. The allegations in Paragraph 3 are legal conclusions to which no response is required.

4. Defendant admits that it received the notice as described in Paragraph 4. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining

---

[1] Defendant incorporates Plaintiff's headings herein for organizational purposes only.

allegations in Paragraph 4.

5.      Admitted in part and denied in part.  Defendant admits that more than sixty days have passed since the notice letter was sent.  Defendant denies the remaining allegations in Paragraph 5 as conclusions of law to which no response is required.

6.      The allegations in Paragraph 6 are legal conclusions to which no response is required.

7.      Admitted.

8.      The allegations in Paragraph 8 are legal conclusions to which no response is required.

9.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9.

10.     Defendant denies that its conduct affected environmental, aesthetic, and/or recreational interests in the Kreutz Creek or the Lower Susquehanna River.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 10.

11.     Defendant denies that its conduct affected environmental, aesthetic, and/or recreational interests in the Kreutz Creek or the Lower Susquehanna River.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11.

12.     The allegations in Paragraph 12 are legal conclusions to which no response is required.

## STATUTORY AND REGULATORY FRAMEWORK

13.     The allegations in Paragraph 13 are legal conclusions to which no response is

required.

14.     The allegations in Paragraph 14 are legal conclusions to which no response is required.

15.     The allegations in Paragraph 15 are legal conclusions to which no response is required.

16.     The allegations in Paragraph 16 are legal conclusions to which no response is required.

17.     The allegations in Paragraph 17 are legal conclusions to which no response is required.

18.     The allegations in Paragraph 18 are legal conclusions to which no response is required.

19.     The allegations in Paragraph 19 are legal conclusions to which no response is required.

20.     The allegations in Paragraph 20 are legal conclusions to which no response is required.

21.     The allegations in Paragraph 21 are legal conclusions to which no response is required.

**FACTS**

22.     Defendant admits Paragraph 22 to the extent that it refers to NPDES permit number PA0046680 amended on April 21, 2017, incorrectly pled as January 23, 2017.

23.     Admitted in part and denied in part.  Defendant admits only that prior discharge monitoring reports reported exceedances for boron and osmotic pressure and that Defendant's current wastewater treatment plant was not designed to treat for boron or osmotic pressure.

Specifically, Defendant denies any allegation that Defendant is not in compliance with the NPDES permit and the Consent Order and Agreement entered into with Pennsylvania Department of Environmental Protection ("PADEP"), dated August 25, 2020, related to its NPDES permit (the "COA"), and attached hereto as Exhibit A.  By way of further response, Defendant notes that it is currently in compliance with all requirements of the COA, including as related to the requirement to construct a treatment plant capable of treating for boron and osmotic pressure. Defendant further denies Plaintiff's characterization or interpretation of Defendant's NPDES permit and refers to the terms thereof in their entirety.  Except to the extent admitted, Defendant leaves Plaintiff to its proofs regarding the allegations in Paragraph 23.

24.    The allegations in Paragraph 24 are legal conclusions to which no response is required.   To the extent Paragraph 24 contains allegations that are not conclusions of law, Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 24.

25.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25.

26.    Admitted that EPA issued updated Drinking Water Health Advisories in June 2022. Defendant denies any implication that EPA's advisory is binding or enforceable with respect to Republic's discharges from Modern Landfill.

27.    Admitted.

## CLAIM FOR RELIEF

28.    Defendant incorporates by reference its foregoing responses to Paragraphs 1 through 27 as if set forth at length herein.

29.    Admitted in part and denied in part.  Defendant admits that boron and osmotic

pressure have been discharged at Modern Landfill. Defendant denies any allegation that Defendant is not in compliance with the NPDES permit and the COA. Defendant further denies Plaintiff's characterization or interpretation of Defendant's NPDES permit and refers to the terms thereof in their entirety. Except to the extent admitted, Defendant leaves Plaintiff to its proofs regarding the allegations in Paragraph 29.

30.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30.

31.     The allegations in Paragraph 31 are legal conclusions to which no response is required.

32.     The allegations in Paragraph 32 are legal conclusions to which no response is required.

33.     The allegations in Paragraph 33 are legal conclusions to which no response is required.

34.     The allegations in Paragraph 34 are legal conclusions to which no response is required.

Defendant denies that Plaintiff is entitled to the relief it seeks in the Ad Damnum Clause titled Requests for Relief. Specifically, with respect to Paragraphs (1)–(6), Defendant denies that Plaintiff is entitled to the relief it seeks.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant sets forth the following affirmative and other defenses to Plaintiff's claims:

1.     Any allegation in the Complaint not specifically admitted above is denied.

2.     The Complaint fails, in whole or in part, to state a claim against Defendant for which relief can be granted.

3.      Plaintiff's claims are barred, in whole or in part, because it lacks standing to bring the claims in the Complaint.

4.      Plaintiff's claims are barred, in whole or in part, by the terms of Defendant's NPDES permit and/or the COA.

5.      Plaintiff's claims are barred, in whole or in part, by the Clean Water Act, Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.

6.      Plaintiff's claims are barred, in whole or in part, by the Clean Streams Law, 35 P.S. § 691.1, *et seq*.

7.      Plaintiff's claims are barred, in whole or in part, to the extent they seek the retroactive application of any statute, regulation, advisory, rule or standard of conduct.

8.      Plaintiff's claims are barred, in whole or in part, by its inability to prove that any alleged act or omission by Defendant directly and proximately resulted in any injury for which Plaintiff can recover.

9.      Plaintiff's claims are barred, in whole or in part, by acts or omissions of third parties.

10.     Plaintiff's alleged injuries, if any, were the result of supervening or intervening causes not attributable to Defendant.

11.     To the extent that Plaintiff incurred any damages as alleged in its Complaint, which Defendant denies, Defendant's conduct was not the legal or proximate cause of those alleged damages.

12.     Plaintiff possesses no right to recover unreasonable attorney's fees, including any fees for claims that could have been resolved in a commercially reasonable manner without litigation.

13.    Plaintiff's action is barred, in whole or in part, because PADEP possesses primary and preemptive jurisdiction and continues to exercise that jurisdiction over Defendant's NPDES permit and related activities and because Defendant is in compliance with the NPDES requirements and COA as administered by PADEP.

14.    Plaintiff's action is barred, in whole or in part, because PADEP has commenced and is diligently prosecuting penalty and corrective action requirements against Defendant pursuant to a consent order issued under comparable State law.

15.    Plaintiff's action is barred, in whole or in part, because PADEP has issued a final order not subject to further judicial review and Defendant has a paid penalties under comparable State law.

16.    Plaintiff's action is barred, in whole or in part, because its action provides no greater relief than has already been provided by PADEP.

17.    Plaintiff's action is barred, in whole or in part, by applicable doctrines of abstention as a result of EPA's and PADEP's ongoing actions related to certain pollutants that are the subject of this Complaint, and the ongoing State administrative process related to Defendant's NPDES permit, treatment plant, and discharges from Modern Landfill, among other things.

18.    Defendant reserves the right to add, modify, amend or supplement its Answer and Affirmative and Other Defenses and further reserves the right to assert cross-claims, counterclaims, and/or third party claims as its investigation and discovery in this case progresses.

## PRAYER FOR RELIEF

Therefore, having answered Plaintiff's Complaint, Defendants pray the Court enter judgment on its behalf and against Plaintiff on all of Plaintiff's claims, and award Defendant its reasonable attorneys' fees and costs to the extent allowed by law, together with any other relief to

which Defendant may be entitled.

Dated: February 1, 2023

Respectfully submitted,

*/s/ **P. Leigh Bausinger***
Bonnie A. Barnett
P. Leigh Bausinger (*pro hac vice*)
Antoinette M. Snodgrass (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone:  (215) 988-2700
Fax:  (215) 988-2757
Email: bonnie.barnett@faegredrinker.com
Email: leigh.bausinger@faegredrinker.com
Email: antoinette.snodgrass@faegredrinker.com

*Attorneys for Defendant*
*Republic Services of Pennsylvania, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, a copy of the foregoing ANSWER TO COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES BY DEFENDANT REPUBLIC SERVICES OF PENNSYLVANIA, LLC was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

Dated: February 1, 2023                    Respectfully submitted,

/s/ ***P. Leigh Bausinger***
Bonnie A. Barnett
P. Leigh Bausinger (*pro hac vice*)
Antoinette M. Snodgrass (*pro hac vice*)

*Attorneys for Defendant*
*Republic Services of Pennsylvania, LLC*

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION

In the matter of:

| | | |
|---|---|---|
| Republic Service of Pennsylvania, LLC | : | The Clean Streams Law |
| 4400 Mount Pisgah Road | : | Modern Landfill |
| York, PA 17406 | : | NPDES Permit No. PA0046680 |
| | : | Windsor and Lower Windsor Townships   : |
| | | York County |

## <u>CONSENT ORDER AND AGREEMENT</u>

This Consent Order and Agreement is entered into this **25th** day of **August** , 2020, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection ("Department") and Republic Service of Pennsylvania, LLC ("Republic").

## <u>FINDINGS</u>

The Department has found and determined the following:

A.     The Department is the agency with the duty and authority to administer and enforce the Pennsylvania Clean Streams Law, the Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. § 691.1 *et seq*. ("The Clean Streams Law"); Section 1917-A of the Administrative Code, the Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 510-17 ("Administrative Code") and the rules and regulations promulgated thereunder, and which has been delegated authority to administer the National Pollutant Discharge Elimination System ("NPDES") permit program under the Federal Clean Water Act, 33 U.S.C § 1342.

1

B.      Republic is a Limited Liability Company registered to do business in Pennsylvania and has a mailing address of 4400 Mount Pisgah Road, York, PA 17406.

C.      Republic does business under the Pennsylvania Department of State registered fictitious name Modern Landfill ("Modern"). Republic owns and operates Modern, which is located at 4400 Mount Pisgah Road, York, PA 17406 in both Windsor and Lower Windsor Townships, York County.

D.      Industrial Wastewater generated by Modern is treated at an on-site industrial wastewater treatment plant ("IWTP"). The discharge from the IWTP constitutes industrial waste under Sections 301 and 307 of the Clean Streams Law, 35 P.S. §§ 691.301 and 691.307.

E.      Republic is authorized to discharge industrial waste from the IWTP through Outfall 001 into Kruetz Creek, a water of the Commonwealth, under the terms and conditions of NPDES Permit No. PA0046680 ("NPDES Permit"), which became effective on April 21, 2017 and expires on January 1, 2022.

F.      The NPDES Permit, from its effective date until January 31, 2020, required Republic to sample effluent Total Boron and report the results to the Department. Effective February 1, 2020, the NPDES Permit requires that Republic also comply with Total Boron effluent concentration and loading limitations.

G.      At times between April 2018 and June 2020, Republic discharged industrial wastewater contrary to the terms and conditions set forth in its NPDES Permit. The violations are fully listed in Exhibit 1, which is attached hereto and incorporated herein by reference.

H.      On January 9, 2019, the Department conducted a compliance inspection of the IWTP. In the inspection report, the Department recommended that Republic adopt and maintain a temperature monitoring system to include daily temperature readings of the IWTP effluent at the

outfall to Kreutz Creek, as well as temperature monitoring points upstream and downstream of the IWTP outfall.

I.      On December 16, 2019 the Department received a letter from Republic providing notification of a planned change in temperature monitoring location. In the letter, Republic proposes to install continuous monitoring temperature and conductivity sensors at the IWTP Outfall, as well as at upstream and downstream monitoring locations.

J.      On January 18, 2019, the Department issued a Notice of Violation ("NOV") to Republic for a pattern of effluent violations, noted by the Department and also self-reported by Republic, of the limitations set forth in its NPDES Permit for the parameters Ammonia-Nitrogen and Osmotic Pressure. In the NOV, the Department requested Republic to submit a written report to the Department within fifteen (15) days.

K.      On February 1, 2019, the Department received a report from Republic in response to the NOV described in Paragraph I, above. In the report, Republic attributes violations of Ammonia-Nitrogen limits to a nutrient deficiency in the Aeration Tanks and a carbon deficiency in the Anoxic Tank. The report indicates that Republic had increased phosphoric acid and methanol feeds to the IWTP as corrective actions. Regarding Osmotic Pressure violations, Republic's report stated that the IWTP was not designed to reduce Osmotic Pressure and suggested installation of a Reverse Osmosis ("RO") treatment system at the IWTP. As an additional corrective action to correct the Osmotic Pressure violations, Republic's report proposed installation of Oxidation Reduction Potential ("ORP") aeration controls at the IWTP.

L.      On July 30, 2019 the Department and representatives of Republic held a meeting at the Modern Landfill Administration Office.  During the meeting, representatives of Republic and the

Department discussed IWTP performance, NPDES Permit Limitations and proposed corrective actions.

M.     On September 20, 2019, the Department received a letter from Republic, requesting an extension of its current NPDES Permit effluent monitoring requirements for the parameter Total Boron. In the letter, Republic stated that the IWTP was not designed to treat for Total Boron or Osmotic Pressure and requested that Total Boron effluent requirements be delayed until proposed IWTP upgrades are completed, then estimated as July 2021.

N.     On October 31, 2019, the Department and representatives of Republic held a meeting at the Department's Southcentral Regional Office at 909 Elmerton Ave., Harrisburg. During the meeting, representatives of Republic outlined corrective actions and improvements planned to the IWTP to prevent further permit noncompliance with regard to the Ammonia-Nitrogen and Osmotic Pressure violations.

O.     During the October 31, 2019 meeting, the Department also requested that Republic provide a report summarizing the reasons for ongoing Fecal Coliform violations documented at the IWTP, listed in Exhibit 1, and identify any necessary corrective actions.

P.     On November 15, 2019, the Department received from Republic a proposed implementation schedule for the installation of a RO treatment system and improvements to the existing Biological Treatment System.

Q.     On January 29, 2020, the Department received from Republic a written report addressing Fecal Coliform effluent violations at the IWTP. In the report, Republic stated its determination that the lagoon vault, downstream of all IWTP treatment units, was a source of Fecal Coliform contamination. As a corrective action, Republic proposed isolating the IWTP effluent from the lagoon vault. Additionally, Republic stated in the report that they expected to submit to the

Department a Water Quality Management Part II Permit ("Part II Permit") for IWTP upgrades in February 2020.

R.      On March 9, 2020, the Department received from Republic a Part II Permit application for upgrades to the IWTP to address ongoing effluent violations, described in Paragraph F, and fully listed in Exhibit 1.

S.      On May 15, 2020 Republic withdrew their Part II Permit application in order modify the proposed designs and resubmit at a later date.

T.      Section 301 of the Clean Streams Law provides: "No person or municipality shall place or permit to be placed, or discharge or permit to flow, or continue to discharge or permit to flow, into any of the waters of the Commonwealth any industrial wastes, except as hereinafter provided in this act." 35 P.S. § 691.301.

U.      Section 307(a) of the Clean Streams Law provides: "No person or municipality shall discharge or permit the discharge of industrial wastes in any manner, directly or indirectly, into any of the waters of the Commonwealth unless such discharge is authorized by the rules and regulations of the department or such person or municipality has first obtained a permit from the department. For the purposes of this section, a discharge of industrial wastes into the waters of the Commonwealth shall include a discharge of industrial wastes by a person or municipality into a sewer system or other facility owned, operated or maintained by another person or municipality and which then flows into the waters of the Commonwealth." 35 P.S. §§ 691.307(a).

V.      Section 611 of the Clean Streams Law states: "It shall be unlawful to fail to comply with any rule or regulation of the department or to fail to comply with any order or permit or license of the department, to violate any of the provisions of this act or rules and regulations adopted hereunder, or any order or permit or license of the department, to cause air or water

pollution, or to hinder, obstruct, prevent or interfere with the department or its personnel in the performance of any duty hereunder or to violate the provisions of 18 Pa. C.S. section 4903 (relating to false swearing) or 4904 (relating to unsworn falsification to authorities). Any person or municipality engaging in such conduct shall be subject to the provisions of sections 601, 602 and 605." 35 P.S. § 691.611.

W.      Republic's violations of the permitted effluent limits described in Paragraphs G and J, above, and in Exhibit 1, constitute violations of Sections 301 and 307 of the Clean Streams Law, 35 P.S. §§691.301 and 691.307.

X.      The violations described in Paragraphs G, J, and W, above, and in Exhibit 1, constitute unlawful conduct under Section 611 of The Clean Streams Law, 35 P.S. § 691.611; a statutory nuisance under Sections 307 and 601 of the Clean Streams Law, 35 P.S. §§ 691.307 and 691.601; and subjects Republic Services to a claim for civil penalties under Section 605 of The Clean Streams Law, 35 P.S. § 691.605.

## **<u>ORDER</u>**

After full and complete negotiation of all matters set forth in this Consent Order and Agreement and upon mutual exchange of covenants contained herein, the parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Republic as follows:

1.      **<u>Authority</u>.**  This Consent Order and Agreement is an Order of the Department authorized and issued pursuant to Sections 5 and 610 of the Clean Streams Law, 35 P.S. §§ 691.5 and 691.610; and Section 1917-A of the Administrative Code, 71 P.S. § 510-17.

2.      **Findings.**

a.      Republic agrees that the findings in Paragraph A through X are true and correct and, in any matter or proceeding involving Republic and the Department, Republic shall not challenge the accuracy or validity of these findings.

b.      The parties do not authorize any other persons to use the findings in this Consent Order and Agreement in any matter or proceeding.

3.      **Corrective Actions.**

**WQM Part II- IWTP Upgrades:**

a.      Within thirty (30) days of execution of this Consent Order and Agreement, Modern shall submit to the Department a complete Part II Permit for upgrades needed to achieve compliance with NPDES effluent limits.

b.      Within one hundred eighty (180) days of Department issuance of the Part II Permit for upgrades needed to achieve compliance with NPDES effluent limits, Republic shall award the contract for construction in accordance with the WQM Part II Permit.

c.      Within sixty (60) days of awarding the contract as described in Paragraph 3.b, above, Republic shall start construction of the upgrades needed to achieve compliance with NPDES effluent limits.

d.      Within three-hundred thirty (330) days of starting construction of the upgrades as described in Paragraph 3.b, above, Republic shall complete construction of the upgrades, in accordance with the Part II Permit. Republic shall verify completion of construction by submitting to the Department the Construction Certificate within thirty (30) days of completing construction of the IWTP upgrades. The IWTP upgrade construction completion date shall be established by the Construction Certification.

**Stream Temperature and Conductivity Monitoring System**

   e. Within sixty (60) days of the date this Consent Order and Agreement, Republic shall begin continuous monitoring the Temperature and Conductivity at the IWTP Outfall 001 and in Kreutz Creek. Republic shall maintain data collected from this monitoring for a period of three (3) years and provide this data to the Department upon request. Republic shall install temperature and electrical conductivity sensors at the following locations:

     i. IWTP Outfall 001

     ii. In Kreutz Creek, approximately 50 feet upstream of the IWTP Outfall 001; and

     ii. In Kreutz Creek, approximately 50 feet downstream of IWTP Outfall 001.

   f. Regarding Stream Temperature and conductivity monitoring as described in Paragraph 3.e, above, if Republic seeks to amend their Stream Temperature and Monitoring System, a written request shall be submitted to the Department for its review and approval.

   g. If the Department or any other entity requires additional information to review and approve any submittal necessary to comply with this Consent Order and Agreement, Republic shall submit the requested information within ten (10) calendar days of the date of the Department's or other entity's notice that such information is required; however, upon written request, including justification from Republic, the Department may authorize in writing an extension of time for such a submittal.

   4. **Civil Penalty Settlement**. Republic consents to the assessment of a civil penalty of $31,300.00, which shall be paid in full upon signing this Consent Order and Agreement. This payment is in settlement of the Department's claim for civil penalties for the violations set forth in Paragraphs G, J, W, and X, above. The payment shall be made by corporate check or the like made payable to

"Commonwealth of Pennsylvania" with a notation of "Clean Water Fund" on the memo line and sent c/o Kevin Buss, Environmental Compliance Specialist, DEP Clean Water Program, 909 Elmerton Avenue, Harrisburg, PA  17110-8200.

      **5.**      **Stipulated Civil Penalties**.

      a.      In the event Republic fails to comply in a timely manner with any term or provision of this Consent Order and Agreement, Republic shall be in violation of this Consent Order and Agreement and, in addition to other applicable remedies, shall pay a civil penalty in the amount determined under the following schedule:

      i.      For any violation of Paragraph 3.a, 3.b, 3.c, 3.d, and 3.e $100 per day for the first 30 days of each violation, and $200 per day for each violation extending beyond the first 30 days.

      ii.      For any violation of Republic's NPDES Permit final effluent limits, Republic shall pay a stipulated penalty as set forth in Exhibit 2.

      b.      Stipulated civil penalty payments for any violation of Paragraph 3 herein shall be payable monthly on or before the fifteenth day of each succeeding month, and shall be forwarded as described in Paragraph 4 above.  Stipulated civil penalties for NPDES Permit effluent limit violations shall be payable monthly on or before the 28th day of each succeeding month in which the effluent violation occurred, and shall be forwarded as described in Paragraph 4 above.

      c.      Any payment under this Paragraph shall neither waive Republic's duty to meet its obligations under this Consent Order and Agreement nor preclude the Department from commencing an action to compel Republic's compliance with the terms and conditions of this Consent Order and Agreement.  The payment resolves only Republic's liability for civil penalties arising from the violation of this Consent Order and Agreement for which the payment is made.

d.      Stipulated civil penalties shall be due automatically and without notice.

6.      **Additional Remedies.**

a.      In the event Republic fails to comply with any provision of this Consent Order and Agreement, the Department may, in addition to the remedies prescribed herein, pursue any remedy available for a violation of an order of the Department, including an action to enforce this Consent Order and Agreement.

b.      The remedies provided by this paragraph and Paragraph 5 (Stipulated Civil Penalties) are cumulative and the exercise of one does not preclude the exercise of any other.  The failure of the Department to pursue any remedy shall not be deemed to be a waiver of that remedy.  The payment of a stipulated civil penalty, however, shall preclude any further assessment of civil penalties for the violation for which the stipulated penalty is paid.

7.      **Reservation of Rights.**  The Department reserves the right to require additional measures to achieve compliance with applicable law.  Republic reserves the right to challenge any action which the Department may take to require those measures.

8.      **Liability of Operator.**  Republic shall be liable for any violations of the Consent Order and Agreement, including those caused by, contributed to, or allowed by its officers, agents, employees, or contractors. Republic also shall be liable for any violation of this Consent Order and Agreement caused by, contributed to, or allowed by its successors and assigns.

9.      **Transfer of Facility.**

a.      The duties and obligations under this Consent Order and Agreement shall not be modified, diminished, terminated or otherwise altered by the transfer of any legal or equitable interest in the IWTP or any part thereof.

b.     If Republic intends to transfer any legal or equitable interest in the IWTP which is affected by this Consent Order and Agreement, Republic shall serve a copy of this Consent Order and Agreement upon the prospective transferee of the legal and equitable interest at least thirty (30) days prior to the contemplated transfer and shall simultaneously inform the Southcentral Regional Office of the Department of such intent.

c.     The Department in its sole discretion may agree to modify or terminate Republic's duties and obligations under this Consent Order and Agreement upon transfer of the IWTP. Republic waives any right that it may have to challenge the Department's decision in this regard.

**10.    Correspondence with Department**. All correspondence with the Department concerning this Consent Order and Agreement shall be addressed to:

> Kevin Buss
> Environmental Protection Compliance Specialist
> Clean Water Program
> PADEP Southcentral Regional Office
> 909 Elmerton Avenue
> Harrisburg, PA. 17110
> Ph: 717.705.4650
> Fax: 717.705.4760
> Email: kbuss@pa.gov

**11.    Correspondence with Republic.**  All correspondence with Republic concerning this Consent Order and Agreement shall be addressed to:

> Republic Services of Pennsylvania, LLC
> d/b/a Modern Landfill
> 4400 Mt. Pisgah Road
> York, PA 17406
> Email: TO'Donnell@republicservices.com
>
> With a copy to
>
> Judith George, Esquire
> Senior Corporate Counsel
> Republic Services

18500 North Allied Way
Phoenix, AZ  85054
Email: JGeorge4@republicservices.com

Republic shall notify the Department whenever there is a change in the contact person's name, title, or address.  Service of any notice or any legal process for any purpose under this Consent Order and Agreement, including its enforcement, may be made by mailing a copy by first class mail to the above address.

12.    **Severability**.  The Paragraphs of this Consent Order and Agreement shall be severable, and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the parties.

13.    **Force Majeure**.

a.    In the event that Republic is prevented from complying in a timely manner with any time limit imposed in this Consent Order and Agreement solely because of a strike, fire, flood, act of God, or other circumstance beyond Republic's control and which Republic, by the exercise of all reasonable diligence, is unable to prevent, then Republic may petition the Department for an extension of time.  An increase in the cost of performing the obligations set forth in this Consent Order and Agreement shall not constitute circumstances beyond Republic's control.  Republic's economic inability to comply with any of the obligations of this Consent Order and Agreement shall not be grounds for any extension of time.

b.    Republic shall only be entitled to the benefits of this paragraph if it notifies the Department within five (5) working days by telephone and within ten (10) working days in writing of the date it becomes aware or reasonably should have become aware of the event impeding performance.  The written submission shall include all necessary documentation, as well as a notarized affidavit from an authorized individual specifying the reasons for the delay, the expected duration of the delay, and the efforts which have been made and are being made by Republic to mitigate the effects of the event and to minimize the length of the

- 12 -

delay.  The initial written submission may be supplemented within ten working days of its submission. Republic's failure to comply with the requirements of this paragraph specifically and in a timely fashion shall render this paragraph null and of no effect as to the particular incident involved.

        c.     The Department will decide whether to grant all or part of the extension requested on the basis of all documentation submitted by Republic and other information available to the Department.  In any subsequent litigation, Republic shall have the burden of proving that the Department's refusal to grant the requested extension was an abuse of discretion based upon the information then available to it.

        **14.**     **Entire Agreement.**  This Consent Order and Agreement shall constitute the entire integrated agreement of the parties.  No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or extent of any provisions herein in any litigation or any other proceeding.

        **15.**     **Attorney Fees.**  The parties shall bear their respective attorney fees, expenses and other costs in the prosecution or defense of this matter or any related matters, arising prior to execution of this Consent Order and Agreement.

        **16.**     **Modifications.**  No changes, additions, modifications, or amendments of this Consent Order and Agreement shall be effective unless they are set out in writing and signed by the parties hereto.

        **17.**     **Titles.**  A title used at the beginning of any Paragraph of this Consent Order and Agreement may be used to aid in the construction of that Paragraph, but shall not be treated as controlling.

        **18.**     **Decisions Under Consent Order.**  Any decision which the Department makes under the provisions of this Consent Order and Agreement, including a notice that stipulated civil penalties are due, is intended to be neither a final action under 25 Pa. Code § 1021.2, nor an adjudication under 2 Pa.

C.S.A. § 101.  Any objection which Republic may have to the decision will be preserved until the Department enforces this Consent Order and Agreement.

19.     **Termination.**  This Consent Order and Agreement shall terminate when Republic has demonstrated six (6) consecutive months of compliance with the IWTP's NPDES Permit final effluent limits, and after the Department determines that Republic has completed to the Department's satisfaction the requirements of Paragraph 3, and paid the Department any stipulated penalties due under Paragraph 5.

20.     **Execution of Agreement.**  This Consent Order and Agreement may be signed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

[remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties hereto have caused this Consent Order and Agreement to be executed by their duly authorized representatives. The undersigned representatives of Republic certify under penalty of law, as provided by 18 Pa. C.S.A. § 4904, that they are authorized to execute this Consent Order and Agreement on behalf of Republic; that Republic consents to the entry of this Consent Order and Agreement as a final ORDER of the Department; and that Republic hereby knowingly waives its right to appeal this Consent Order and Agreement and to challenge its content or validity, which rights may be available under Section 4 of the Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. § 7514; the Administrative Agency Law, 2 Pa. C.S.A. § 103(a) and Chapters 5A and 7A; or any other provisions of law. Signature by Republic's attorney certifies only that the agreement has been signed after consulting with counsel.

FOR REPUBLIC SERVICES OF
PENNSYLVANIA, LLC

FOR THE COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
ENVIRONMENTAL PROTECTION:


*/s/ Kevin Bremer*
Kevin Bremer
Vice President

*/s/ Maria D. Bebenek*          08/25/2020
Maria D. Bebenek, P.E.
Program Manager
Clean Water Program


*/s/ David Buzzell*
David Buzzell, Esq.
Land Air Water Legal Solutions LLC
Outside Environmental Counsel to Republic

*/s/ Janna C. Williams*          08/25/2020
Janna Williams, Esq.
Assistant Counsel

**EXHIBIT 1**

*Effluent violations with respect to limitations in NPDES Permit, No. PA0046680.*

| Month | Statistical Base Code | Parameter | Permit Limit | Reported Value |
|---|---|---|---|---|
| April 2018 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 178.5 mOs/kg |
| April 2018 | Average Monthly | Total Suspended Solids | 10 mg/L | 15.8 mg/L |
| June 2018 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 226 mOs/kg |
| June 2018 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 190.2 mOs/kg |
| July 2018 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 322 mOs/kg |
| July 2018 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 280 mOs/kg |
| August 2018 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 193.5 mOs/kg |
| August 2018 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 200 mOs/kg |
| September 2018 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 206 mOs/kg |
| September 2018 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 205 mOs/kg |
| October 2018 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 224.5 mOs/kg |
| October 2018 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 231 mOs/kg |
| November 2018 | Daily Maximum | Ammonia-Nitrogen | 6.0 mg/L | 7.50 mg/L |
| November 2018 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 375 mOs/kg |
| November 2018 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 192.5 mOs/kg |
| December 2018 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 200 mOs/kg |
| January 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 179.5 mOs/kg |
| February 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 203 mOs/kg |
| February 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 191 mOs/kg |
| March 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 201 mOs/kg |
| April 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 145 mOs/kg |
| May 2019 | Instantaneous Maximum | Fecal Coliform | 1000 CFU/100mL | > 4200 CFU/100mL |
| May 2019 | Geometric Mean | Fecal Coliform | 200 CFU/100mL | 1590 CFU/100mL |
| May 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 169 mOs/kg |
| June 2019 | Geometric Mean | Fecal Coliform | 200 CFU/100mL | 2018 CFU/100mL |
| June 2019 | Instantaneous Maximum | Fecal Coliform | 1000 CFU/100mL | 18000 CFU/100mL |
| June 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 211.5 mOs/kg |
| June 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 218 mOs/kg |
| July 2019 | Instantaneous Maximum | Fecal Coliform | 1000 CFU/100mL | > 6000 CFU/100mL |
| July 2019 | Geometric Mean | Fecal Coliform | 200 CFU/100mL | > 3374 CFU/100mL |
| July 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | < 129.5 mOs/kg |

| | | | | |
|---|---|---|---|---|
| July 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 249.0 mOs/kg |
| August 2019 | Geometric Mean | Fecal Coliform | 200 CFU/100mL | >2844.9 CFU/100mL |
| August 2019 | Instantaneous Maximum | Fecal Coliform | 1,000 CFU/100mL | 8800 CFU/100mL |
| August 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 237 mOs/kg |
| September 2019 | Daily Maximum | Ammonia-Nitrogen | 2.0 mg/L | 3.10 mg/L |
| September 2019 | Geometric Mean | Fecal Coliform | 200 CFU/100mL | > 683.3 CFU/100mL |
| September 2019 | Instantaneous Maximum | Fecal Coliform | 1,000 CFU/100mL | 1270 CFU/100mL |
| September 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 191 mOs/kg |
| September 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 255 mOs/kg |
| October 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 332 mOs/kg |
| October 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 307 mOs/kg |
| November 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 290 mOs/kg |
| November 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 151 mOs/kg |
| November 2019 | Daily Maximum | Total Suspended Solids | 20 mg/L | 29 mg/L |
| December 2019 | Average Monthly | a-Terpineol | 0.00307 mg/L | < 0.00516 mg/L |
| December 2019 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 262 mOs/kg |
| December 2019 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 136.5 mOs/kg |
| December 2019 | Average Monthly | p-Cresol | 0.00269 mg/L | < 0.00374 mg/L |
| January 2020 | Average Monthly | a-Terpineol | 0.00307 mg/L | < 0.00387 mg/L |
| January 2020 | Instantaneous Maximum | Fecal Coliform | 10000 CFU/100mL | > 24196 CFU/100mL |
| January 2020 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 245.5 mOs/kg |
| January 2020 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 282 mOs/kg |
| January 2020 | Average Monthly | p-Cresol | 0.00269 mg/L | < 0.00281 mg/L |
| February 2020 | Average Monthly | a-Terpineol | 0.00307 mg/L | < 0.00516 mg/L |
| February 2020 | Geometric Mean | Fecal Coliform | 2,000 CFU/100mL | >31,309 CFU/100mL |
| February 2020 | Instantaneous Maximum | Fecal Coliform | 10,000 CFU/100mL | 198,600 CFU/100mL |
| February 2020 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 308 mOs/kg |
| February 2020 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 161 mOs/kg |
| February 2020 | Average Monthly | p-Cresol | 0.00269 mg/L | < 0.00374 mg/L |
| February 2020 | Daily Maximum | Total Boron | 5.52 mg/L | 18.6 mg/L |
| February 2020 | Average Monthly | Total Boron | 4.12 mg/L | 15.68 mg/L |
| February 2020 | Daily Maximum | Total Boron | 23 lbs/day | 26.9 lbs/day |
| February 2020 | Average Monthly | Total Boron | 17.2 lbs/day | 23.4 lbs/day |
| March 2020 | Average Monthly | p-Cresol | 0.00269 mg/L | < 0.0037 mg/L |
| March 2020 | Average Monthly | a-Terpineol | 0.00307 mg/L | < 0.00516 mg/L |

| March 2020 | Average Monthly | Total Boron | 4.12 mg/L | 13.88 mg/L |
|---|---|---|---|---|
| March 2020 | Instantaneous Maximum | Fecal Coliform | 10000 CFU/100mL | 173300 CFU/100mL |
| March 2020 | Geometric Mean | Fecal Coliform | 2000 CFU/100mL | > 64450 CFU/100mL |
| March 2020 | Daily Maximum | Total Boron | 5.52 mg/L | 15.00 mg/L |
| March 2020 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 289 mOs/kg |
| March 2020 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 368 mOs/kg |
| March 2020 | Daily Maximum | Total Boron | 23.0 lbs/day | 23.1 lbs/day |
| April 2020 | Average Monthly | a-Terpineol | 0.00307 mg/L | < 0.00516 mg/L |
| April 2020 | Average Monthly | p-Cresol | 0.00269 mg/L | < 0.00374 mg/L |
| April 2020 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 262 mOs/kg |
| April 2020 | Average Monthly | Total Boron | 17.2 lbs/day | 20.8 lbs/day |
| April 2020 | Instantaneous Maximum | Fecal Coliform | 10000 CFU/100mL | > 241960 CFU/100mL |
| April 2020 | Average Monthly | Total Boron | 4.12 mg/L | 15.42 mg/L |
| April 2020 | Daily Maximum | Total Boron | 23.0 lbs/day | 36.0 lbs/day |
| April 2020 | Geometric Mean | Fecal Coliform | 2000 CFU/100mL | > 4985 CFU/100mL |
| April 2020 | Daily Maximum | Total Boron | 5.52 mg/L | 22.00 mg/L |
| April 2020 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 246 mOs/kg |
| May 2020 | Average Monthly | Boron, Total | 4.12 mg/L | 18.88 mg/L |
| May 2020 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 230 mOs/kg |
| May 2020 | Geometric Mean | Fecal Coliform | 200 CFU/100mL | 694 CFU/100mL |
| May 2020 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 241 mOs/kg |
| May 2020 | Daily Maximum | Boron, Total | 5.52 mg/L | 21.50 mg/L |
| May 2020 | Average Monthly | Boron, Total | 17.2 lbs/day | 20.2 lbs/day |
| May 2020 | Average Monthly | a-Terpineol | 0.00307 mg/L | < 0.00516 mg/L |
| May 2020 | Average Monthly | p-Cresol | 0.00269 mg/L | < 0.00374 mg/L |
| May 2020 | Daily Maximum | Boron, Total | 23.0 lbs/day | 29.8 lbs/day |
| May 2020 | Instantaneous Maximum | Fecal Coliform | 1000 CFU/100mL | 3450 CFU/100mL |
| June 2020 | Daily Maximum | Boron, Total | 5.52 mg/L | 17.50 mg/L |
| June 2020 | Average Monthly | Boron, Total | 4.12 mg/L | 7.25 mg/L |
| June 2020 | Average Monthly | p-Cresol | 0.00269 mg/L | < 0.00374 mg/L |
| June 2020 | Daily Maximum | Osmotic Pressure | 183 mOs/kg | 313 mOs/kg |
| June 2020 | Average Monthly | Osmotic Pressure | 129 mOs/kg | 301 mOs/kg |
| June 2020 | Daily Maximum | Boron, Total | 23.0 lbs/day | 23.9 lbs/day |
| June 2020 | Average Monthly | a-Terpineol | 0.00307 mg/L | < 0.00516 mg/L |

**Exhibit 2: Modern Landfill IWTP, NPDES Permit No. PA0046680, Stipulated Penalties**

| Stipulated penalties for violations of all NPDES final effluent limits (except pH and DO) | | | |
|---|---|---|---|
| | Penalty from Execution of COA through Completion of Paragraph 3.d Requirements | | Penalty from Completion of Paragraph 3.d Requirements through COA Termination |
| **Monthly/Geometric Average Violations** | | | |
| *Percent over permit limits* | | | |
| 0-33 % | $250.00 | Assessed | $500.00 |
| 33.1-67 % | $300.00 | Monthly | $600.00 |
| 67.1-100 % | $350.00 | | $600.00 |
| >100 % | $400.00 | | $700.00 |
| **Instantaneous/Daily Maximum Violations** | | | |
| *Percent over permit limits* | | | |
| 0-33 % | $125.00 | Assessed | $250.00 |
| 33.1-67 % | $150.00 | Daily | $300.00 |
| 67.1-100 % | $175.00 | | $350.00 |
| >100 % | $200.00 | | $400.00 |
| **Stipulated penalties for violations of pH** | | | |
| | Penalty from Execution of COA Through Completion of Paragraph 3.d Requirements | | Penalty from Completion of Paragraph 3.d Requirements Through COA Termination |
| **Instantaneous/Daily Maximum Violations** | | | |
| *Range of Standard Units over permit limits* | | | |
| 9.1 – 9.6 S.U. | $60.00 | Assessed | $80.00 |
| 9.7 – 10.2 S.U. | $80.00 | Daily | $100.00 |
| 10.3 – 10.8 S.U. | $100.00 | | $120.00 |
| $\geq$ 10.9 S.U. | $120.00 | | $140.00 |
| **Instantaneous/Daily Minimum Violations** | | | |
| *Range of Standard Units under permit limits* | | | |
| 5.4 – 5.9 S.U. | $60.00 | Assessed | $80.00 |
| 4.8 – 5.3 S.U. | $80.00 | Daily | $100.00 |
| 4.2 – 4.7 S.U. | $100.00 | | $120.00 |
| $\leq$ 4.2 S.U. | $120.00 | | $140.00 |
| **Stipulated penalties for violations of Dissolved Oxygen** | | | |
| | Penalty from Execution of COA Through Completion of Paragraph 3.d Requirements | | Penalty from Completion of Paragraph 3.d Requirements Through COA Termination |
| **Instantaneous/Daily Minimum Violations** | | | |
| *Percent under permit limits* | | | |
| 0-33 % | $60.00 | Assessed | $80.00 |
| 33.1-67 % | $80.00 | Daily | $100.00 |
| 67.1-100 % | $100.00 | | $120.00 |
| >100 % | $120.00 | | $140.00 |

*Concentration and loading shall be considered separate violations.*