

*faegredrinker.com*

**Leigh Bausinger**
leigh.bausinger@faegredrinker.com
+1 215 988 2725 direct

Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania  19103
+1 215 988 2700 main
+1 215 988 2757 fax

January 22, 2024

<u>**VIA ECF**</u>

Honorable Jennifer P. Wilson
United Stated District Court
Middle District of Pennsylvania
228 Walnut Street
Harrisburg PA 17101

Re:   *Lower Susquehanna Riverkeeper Association v. Republic Services of Pennsylvania, LLC* (MDPA), Case No. 1:23-cv-00044

Dear Judge Wilson:

On behalf of Defendant Republic Services of Pennsylvania, LLC ("Republic") in the above-referenced matter, I write in response to Plaintiff's letter dated January 17, 2024 and in advance of the status conference with the Court scheduled for January 24, 2024 at 9:15am.  Plaintiff's letter was filed along with a Motion to Seal due to excerpts of documents produced by Republic marked as confidential.  Republic does not oppose Plaintiff's motion to seal.  Although the letter itself has not formally been filed due to the pending motion to seal, Republic nonetheless files this response to guide the Court in advance of the scheduled status conference.

Preliminarily, all discovery disputes raised by Plaintiff's previous letters to the Court have been resolved without Court involvement.  As agreed, Republic searched for, collected, and produced additional documents to Plaintiff and has since made additional productions after meet and confer calls among counsel; an additional production is forthcoming.  The only issue left to resolve relates to information that Plaintiff wishes had relevance to this litigation for its own individual purposes—but simply does not.  Due to discovery disputes and Plaintiff's robust discovery demands, Republic also requests that all remaining deadlines in this case are extended sixty days in order for the parties to have meaningful time to complete depositions and for the parties to engage in settlement discussions and potentially alternative dispute resolution.  These matters are addressed in turn.

### **<u>Plaintiff Admits the Proper Scope of Discovery in its Letter</u>**

To provide the Court background on this matter, Plaintiff's letter provides a paragraph that is instructive in two ways:  first, for how it characterizes Plaintiff's own claims, and second, for what it boldly ignores.  Plaintiff writes:

> In January 2023, Plaintiff filed its Complaint alleging that, since July 2019, Republic had repeatedly violated its water quality-based effluent limits for boron and osmotic pressure in its 2017 NPDES Permit No. PA0046680 under the Clean Water Act ***at Outfall 001 at its Modern Landfill in York County, Pennsylvania***. Plaintiff also allege that, since at least June 2022, Republic has violated the

Honorable Jennifer P. Wilson  - 2 -  January 22, 2024

> Clean Water Act by discharging toxic per- and polyfluoroalkyl substances (PFAS) **_from Outfall 001 at the Modem Landfill_** into Kreutz Creek without an NPDES permit.

Letter at 1 (emphasis added).  What is clear from this paragraph is that Plaintiff's claims center around discharges **_from Outfall 001 at Republic's Modern Landfill facility_**.  By Plaintiff's own admission, Plaintiff's only claims in this litigation involve discharges of (1) boron and osmotic pressure and (2) PFAS—both specifically at Outfall 001 at Republic's Modern Landfill.  While Republic denies Plaintiff's claims that is has been harmed or that it even has standing to bring this action, Republic has admitted that prior discharge monitoring reports reported exceedances for boron and osmotic pressure from Outfall 001 and that its former wastewater treatment plant was not designed to treat for boron or osmotic pressure.  Plaintiff's only other claim in this action is that Republic has violated the Clean Water Act and/or its permit with respect to PFAS—also discharges from Outfall 001.  Republic denies these claims and further avers that there are complex and extensive ongoing regulatory and administrative processes regarding PFAS discharges that should not be addressed through judicial review.[1]  Indeed, in August 2023, PADEP issued Republic a draft permit for PFAS limitations, which has been subject to a public notice and comment period.

Thus, the proper scope of discovery in this case is limited to three constituents—boron, osmotic pressure, and PFAS—as they relate to Republic's discharges at Modern Landfill's Outfall 001, as stated in the Notice of Intent ("NOI") letter and as pled in the Complaint.  Any additional arguments regarding discharges at locations other than Outfall 001 are simply not within the scope of this action as pled.

### Method and Location of Disposal is Not Within the Scope of Discovery

Republic has produced documents and information related to discharges from Outfall 001 over many productions and pursuant to numerous formal discovery requests and informal requests from counsel.  In its letter, Plaintiff complains Republic fails to provide information relating to a second waste stream not identified in its NOI or complaint.  Even Plaintiff admits that this second stream—the reject stream—is not discharged through Outfall 001 or any other outfall at Republic's Modern Landfill facility.  Thus, discovery related to the reject stream including the method of disposal and cost of disposal is not related to this litigation, relevant to the claims or defenses in this action, or proportional to the needs of the case and therefore not within the proper scope of discovery.

Plaintiff admits that this speculative and absurd line of inquiry is nothing more than a fishing expedition in an attempt to "catch" Republic or its vendors in some scheme for illegal

---

[1] The background Plaintiff provides also conveniently omits that its lawsuit does nothing more than piggyback onto a preexisting regulatory process in which Republic worked proactively to cooperate with the Pennsylvania Department of Environmental Protection ("PADEP") to craft a solution to the disparity in the new regulatory limits and Republic's existing infrastructure.  In anticipation of the new boron and osmotic pressure limits that went into effect in February 2020, Republic negotiated and entered into a Consent Order and Agreement with PADEP, executed August 25, 2020, related to its NPDES permit (the "COA") to set milestones for upgrades to the treatment plant and address any potential ongoing exceedances of boron and osmotic pressure limits.  Republic met the milestones outlined in the COA.  Construction of the upgrades at the treatment plant to address boron and osmotic pressure were completed in April 2023 and has been running effectively since.  Thus, Republic avers that it was and is in compliance with all requirements of its permit, the COA and the Clean Water Act.

Honorable Jennifer P. Wilson             - 3 -                              January 22, 2024

discharge. Plaintiff admits that it wants to use the information unrelated to this lawsuit to determine whether to file another lawsuit.

> Republic also objects that Plaintiff might use the location information to bring a citizen suit against the off-site disposal site, by claiming that the PFAS in Republic's disposed wastewater is an unpermitted discharge at that location. Jan. 4, 2024 Letter at 2 (Plaintiff "may wish to know such information for other potential citizens suit cases against the facilities accepting Republic's leachate and RO reject"). That is not an improper purpose. Plaintiff is legitimately concerned that Republic is transferring its discharges of PFAS from one unpermitted discharge location (Outfall 001 at the landfill) to another new unpermitted discharge location.

Letter at 2. This is not only improper for discovery, but it also denigrates, with no basis, the integrity of Republic, its vendors and the duties of PADEP. In a case expressly pled by Plaintiff as being solely centered around Republic's discharges of boron, osmotic pressure, and PFAS from Outfall 001 into Kreutz Creek, Plaintiff is simply not entitled to information regarding an entirely separate disposal stream in order to gather information on whether it wants to bring another action against Republic or any other entity.

Any information relevant to be gained by the reject stream has been produced. Republic did not object to production of documents or other information related to the actual *cost* of leachate and reject disposal; Republic agrees that such information is potentially relevant to Plaintiff's economic benefit penalty theory. In fact, Republic has answered detailed interrogatories with this information. Additionally, in Plaintiff's Second Requests for Production of Documents, Plaintiff requested the underlying invoices showing these costs even though the information on the total cost had already been provided in other documents and interrogatory answers. Nevertheless, Republic produced invoices related to the cost of disposal of leachate and the reject wastewater since July 2022. Republic has endeavored to search for and committed to producing any additional invoices between January – July 2022 by February 2, 2024.

Courts within the Third Circuit have limited the scope of discovery under similar circumstances. For example, in *Raritan Baykeeper, Inc. v. NL Industries, Inc.*, Raritan Baykeeper filed a citizens' suit under the Clean Water Act against NL Industries for alleged unpermitted discharges and contaminated river sediments in the Raritan River. Civil Action No. 09–4117, 2014 WL 2965881 (D.N.J. 2014). During discovery, Raritan Baykeeper requested all NPDES/NJPDES permitting documentation from NL Industries for the Raritan River site from 1972 to present and information about all "source areas" at the Raritan River site, even those that had not been the focus of the litigation. *Id.* at *6. NL Industries objected to the requests as beyond the scope of the river sediment contamination claim. *Id.* at *1. Raritan Baykeeper filed a motion to compel the discovery responses. The Court noted that while the scope of discovery is "broad," any requested documents must be "relevant," to the action. *Id.* at *3. Denying Raritan Baykeeper's motion to compel discovery, the Court explained that Raritan Baykeeper's requests were "overly broad" and "not limited to the five contaminants identified in the Complaint, or for permits that concerned the Raritan River." *Id.* at *6. The Court's findings in *Raritan Baykeeper* are analogous to the requests Plaintiff now makes of Republic. Plaintiff seeks to obtain information about the reject stream that is unrelated to Outfall 001 and the Kreutz Creek discharges and therefore not related to the discharge of any constituents at issue.

Honorable Jennifer P. Wilson — - 4 - — January 22, 2024

Plaintiff's requests improperly expand the scope of discovery beyond "relevant" materials and should be disregarded.

Even cases discussing this exact calculation have held that it is the cost information—which has already been provided by Republic—that matters to the calculation, not the actual location of disposal.  Before the award was reversed by the Third Circuit for lack of harm to the waterbody at issue and therefore lack of standing, the District of New Jersey held that the **cost** of the hauling was needed to perform the benefit calculation, not necessarily the location.  *See, e.g.*, *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, No. 89-3193(JCL), 1995 WL 461252, at *14 (D.N.J. Mar. 9, 1995) (explaining that the plaintiff's expert used the DMRs to determine the amount of wastewater it discharged before it started hauling and the cost of hauling per truckload), *rev'd on the merits by Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 125 (3d Cir. 1997).

The only case that Plaintiff cites—*United States v. Allegheny Ludlum Corp.*, 366 F.3d 164 (3d Cir. 2004), does not discuss or even intimate that the location of disposal is necessary or important to economic benefit calculations.  Plaintiff proffers the case for the general statement that "[T]he proper method for determining economic benefit is to base the calculation on the least costly method of compliance."  *Id.* at 164.[2]  Republic, however, has already provided all of the necessary cost information that Plaintiff claims is needed.

Plaintiff cites no authority that the method or location itself is integral to its economic benefit calculation or indeed relevant to any claim or defense in this case.  In a case expressly pled by Plaintiff as being solely centered around Republic's discharges of boron, osmotic pressure, and PFAS from Outfall 001, Plaintiff is simply not entitled to information regarding an entirely separate disposal stream at another location.

### **A 60-Day Extension is Necessary to Complete Discovery and Provide the Parties an Opportunity to Explore Settlement**

Fact discovery is set to end February 29 with dispositive motions and expert discovery closely following in the thirty days after close of discovery.  No depositions have occurred to date.  Instead, Plaintiff has engaged in broad-based written discovery, included two sets of requests for production and interrogatories, as well as many informal document and information requests.  Republic has been cooperative and responded in good faith to every formal and informal request.  However, this process has exhausted the majority of discovery.

Prior to the close of discovery, Plaintiff is seeking at least two depositions—one of which will require immense preparation of Republic's 30(b)(6) witness to respond to questions on the more than a hundred topics and subtopics and thousands of pages of documents identified in Plaintiff's notice.  Republic will also seek several depositions of Plaintiff's members.  While Republic has continually attempted to have settlement discussions with Plaintiff, Plaintiff has refused to engage in those discussions, increasingly asking for more and more discovery and culminating in the above discovery dispute.  Republic continues to assert that this dispute can be resolved among the parties, but no meaningful discussions have taken place to date.  With the resolution of the above dispute, Plaintiff has represented that it will be in a position to begin those discussions.

---

[2] The Third Circuit did not discuss method or location of disposal at all in this case.  It merely stated the general principle and remanded for further inquiry.

Honorable Jennifer P. Wilson — - 5 - — January 22, 2024

      In order focus on settlement and to provide the parties enough time to complete discovery, Republic requests a sixty-day extension of all remaining pre-trial deadlines.

*   *   *

      In sum, for the reasons stated above, (1) all discovery related the method and cost of disposal of the reject stream—which is not discharged at Outfall 001—is outside the proper scope of discovery and (2) Discovery and all remaining deadlines should be extended sixty (60) days to allow the parties to complete depositions and begin meaningful settlement discussions.

      Thank you for your attention to this matter.

Very truly yours,

*/s/ Leigh Bausinger*

Leigh Bausinger
Partner

cc:    Stephen G. Harvey, Esq.
        James M. Hecker, Esq.
        Antoinette M. Snodgrass, Esq.