## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LOWER SUSQUEHANNA     )
RIVERKEEPER ASSOCIATION,    )
                         )
   **Plaintiff,**            )
                         )     **Case No. 1:23-cv-00044-JPW**
     **v.**                )
                         )
REPUBLIC SERVICES OF      )
PENNSYLVANIA, LLC,        )
                         )
   **Defendant.**          )

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

James M. Hecker
Public Justice
1620 L Street, N.W. Suite 630
Washington, DC 20036
(202) 797-8600 ext. 225
jhecker@publicjustice.net

Stephen G. Harvey
Michael E. Gehring
E. Kelly Conway
Steve Harvey Law LLC
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103
(215) 438-6600
steve@steveharveylaw.com
mike@steveharveylaw.com
kelly@steveharveylaw.com

Attorneys for Plaintiff

**Statutory Background.** The Federal Water Pollution Control Act (commonly called the Clean Water Act ("CWA")) prohibits any person from discharging any pollutant without specific authorization. 33 U.S.C. § 1311(a). The purpose of the CWA is to "restore and maintain the ... integrity of the Nation's waters." *Cty. of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1468 (2020) (citation omitted). The CWA does this "by insisting that a person wishing to discharge any pollution into navigable waters first obtain EPA's permission to do so." *Id*. (citations omitted).

Under the CWA, permittees who violate their National Pollutant Discharge Elimination System ("NPDES") permits are subject to federal and state enforcement action. 33 U.S.C. §§ 1319, 1342(b)(7). In addition, citizens may sue any person who violates any term or condition in an NPDES permit, subject to two limitations. *Id*. §§ 1365(a)(1), (f)(6). First, the citizen must give 60 days' advance notice of his intent to file suit to the U.S. Environmental Protection Agency ("EPA"), the State, and the violator. *Id.* § 1365(b)(1)(A). Second, a citizen may not sue if EPA or the State bring certain types of judicial or administrative enforcement actions. *Id.* §§ 1365(b)(1)(B), 1319(g)(6)(A).

**Statement of Facts.** In January 2017, the Pennsylvania Department of Environmental Protection ("PADEP") issued NPDES Permit No. PA0046680 to Defendant Republic Services of PA LLC ("Republic") for its Modern Landfill

("the Landfill"). Pl.'s Statement of Material Facts "PSMF"), ¶ 1, Ex. A at 1. Effective on February 1, 2017, the permit limited the Landfill's discharges of osmotic pressure ("OP") from Outfall 001 to 129 mg/l as a monthly average and 183 mg/l as a daily maximum. PSMF ¶ 2, Ex. A at 3. Effective on February 1, 2020, the permit limited both the concentration and mass of boron in the Landfill's discharges from Outfall 001. The concentration limits are 4.12 mg/l as a monthly average and 5.52 mg/l as a daily maximum, and the mass limits are 17.2 lbs/day as a monthly average and 23 lbs/day as a daily maximum. PSMF ¶ 3, Ex. A at 5.

Republic admits that it "definitively became aware" that the Landfill's wastewater treatment plant was not capable of meeting the permit limits for OP and boron on January 23, 2017, the same day PADEP issued its permit. PSMF ¶ 4, 9/18/23 Interrog. Rsp. at 4-5, Ex. B. From October 2017 to April 2023, Republic exceeded its permit limits for OP and boron 449 times, as shown below:

| Parameter | Average | Maximum |
|---|---|---|
| Boron Concentration | 39 | 162 |
| Boron Mass | 31 | 78 |
| Osmotic Pressure Concentration | 57 | 82 |
| **Subtotals** | **127** | **322** |
| **Total** | | **449** |

PSMF ¶¶ 5-6, Monitoring and Non-Compliance Forms, Ex. C; Stipulation, Doc. #24 at 1-11. In April 2023, Republic completed installation of a reverse osmosis system to treat boron and OP, and thereafter it has been in compliance with its permit. PSMF ¶ 7, Haydar Dep. at 91-92, Ex. D.

Republic discharged per- and polyfluoroalkyl substances ("PFAS") from Outfall 001 to Kreutz Creek without a required NPDES permit on ten days. Plaintiff measured PFAS in those discharges on July 15, August 29, and September 30 in 2022. PSMF ¶ 8, Evgeniadis Decl. ¶ 8, Ex. E. Republic measured PFAS in its discharges on January 11, February 22, March 23, April 25, May 23, June 20, and September 19 in 2023. PSMF ¶ 8, Sampling Reports, Ex. F.

EPA considers PFAS to be pollutants that are subject to CWA regulation and permitting. PSMF ¶ 9, EPA, 2023 ELG Plan 15 at 6-13, Ex. G. PADEP also considers PFAS to be pollutants that are subject to CWA regulation and permitting. PSMF ¶ 10, NPDES Permit Fact Sheet, pp. 39-44, Ex. H.

In November 2022, Plaintiff notified Republic, PADEP, and EPA that it intended to file a citizen suit against Republic for its violations of the OP and boron limits in its NPDES permit and for unpermitted discharges of PFAS. PSMF ¶ 11, Hecker Decl., ¶¶s 2-3, Ex. I. Neither PADEP nor EPA has filed a judicial proceeding against Republic to enforce its OP and boron limits or its unpermitted discharges of PFAS. *Id.*, ¶ 4. In August 2020, PADEP and Republic entered into a Consent Order and Agreement ("COA") under the Pennsylvania Clean Streams Law that imposed penalties for Republic's past violations of its boron and OP limits, and stipulated penalties for future violations. PSMF ¶ 12, COA, Ex. J.

More than 60 days after sending its notice letter, Plaintiff filed its Complaint

against Republic on January 11, 2023. PSMF ¶ 14, Doc. #1.

## I.  PLAINTIFF HAS STANDING TO BRING THIS ACTION

Section 505(g) of the CWA authorizes the filing of a citizen suit by "any person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). This provision confers standing to the limits of the U.S. Constitution. *PIRG v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 70 n. 3 (3d Cir. 1990). To have constitutional standing, a plaintiff must suffer an actual or threatened injury-in-fact that is fairly traceable to the challenged action by the defendant and is likely to be redressed by a favorable decision. *Friends of the Earth v. Laidlaw Env'tl Serv.*, 528 U.S. 167, 180-81 (2000). Plaintiff's members satisfy these requirements.

This Court has stated that, to establish injury-in-fact, "a plaintiff need only show that he [or she] used the affected area and that he [or she] is an individual for whom the aesthetic and recreational values of the area [are] lessened by the defendant's activity." *Lower Susquehanna Riverkeeper v. Keystone Protein Co.*, 520 F. Supp. 3d 625, 632 (M.D. Pa. 2021). To confer standing, the claimed injury "need not be large, an identifiable trifle will suffice." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000). Moreover, Plaintiff need not prove that Republic's discharges have an adverse environmental impact. *Id*. at 159. It is enough that the plaintiff has a "reasonable concern" that the

discharge will impair his enjoyment of recreational activities because those activities are dependent upon good water quality. *Id*. at 159-60.

Plaintiff's members have used Kreutz Creek downstream from the Landfill's discharge point for recreational and other activities, including wading, swimming, fishing, drinking well water, and observing aquatic life. They have contacted and inhaled creek water, used nearby groundwater for drinking water, and stopped using the Creek for swimming and contact recreation because of their concerns that it is polluted. PSMF ¶ 16, Kostas, Johnson, Winand, Monticchio, Allison, and Evgeniadis Decls., Exs. E, K-O. Four of those members own property that is on or very near the Creek and about 1½ miles south of, and downstream from, the landfill. PSMF ¶ 16, Evgeniadis Decl., ¶ 5 & Map, Ex. E. "[A] property owner in the path of a toxic discharge whose injury is ongoing" is "precisely the type of plaintiff" who has standing. *Gaston Copper,* 204 F.3d at 159.

Those members have reasonable concerns that their health and environmental interests may be harmed by the Landfill's excessive discharges of boron and osmotic pressure. PADEP has classified both pollutants as toxic substances. PSMF ¶ 17, 2023 NPDES Permit Fact Sheet at 32-36, Ex. H. PADEP set the Landfill's permit limits for those substances at levels necessary to comply with state water quality standards. *Id.* at 36. When discharge limits "are set at the level necessary to protect the designated uses of the receiving waterways, their

violation necessarily means that these uses may be harmed." *Gaston Copper,* 204 F.3d at 157.

The standard for osmotic pressure is designed "to protect aquatic life from the adverse effects of dissolved solids" which "adversely impact aquatic life by altering the osmotic pressure of the external environment, which interferes with the organisms' osmoregulatory functions." PSMF ¶ 18, 32 Pa. Bulletin 428 (Jan. 26, 2002), Ex. P at 3. The standard "remains important because OP pressure in and of itself will kill aquatic organisms." PSMF ¶ 18, PADEP, *Report to Environmental Quality Board, Comment and Response Document, Triennial Review of Water Quality Standards*, *Amendments to 25 Pa Code Chapters 93* (April 2013), at 27, Ex. Q. The monthly average osmotic pressure in Republic's discharges has been as high as 345 mOs/kg, more than twice the 2017 permit limit. PSMF ¶ 18, Doc. #24, p. 4 (line 98). Plaintiff's members therefore have a reasonable concern that those discharges pose a risk to aquatic life in the Creek that those members observe and enjoy.

Pennsylvania has classified boron as a toxic substance and established a water quality criterion for the protection of human health of 3,100 ug/l (3.1 mg/l) for that chemical. PSMF ¶ 19, 25 Pa. Code § 93.8c, Table 5. This criterion is designed to protect people from "probable modes of exposure (such as, but not limited to ingestion from drinking water and fish consumption, inhalation and

dermal absorption)." PSMF ¶ 19, 25 Pa. Code § 93.8c(a). EPA has found that

"boron can pose developmental risk to humans when released to groundwater and

can result in stunted growth, phytotoxicity, or death to aquatic biota and plants

when released to surface water bodies." PSMF ¶ 20, EPA, Proposed Rule,

*Disposal of Coal Combustion Residuals from Electric Utilities*, 83 Fed. Reg.

11584, 11589 (Mar. 15, 2018). Waterfowl that ingest boron and boron compounds

have been found to suffer adverse effects on growth and reproduction.

*PennEnvironment v. RRI Energy Northeast Management Company*, 744 F. Supp.

2d 466, 480 (W.D. Pa. 2010). "Representative species of aquatic plants,

invertebrates, fishes, and amphibians can usually tolerate up to 10 mg[/l of boron]

medium for extended periods without adverse effects." PSMF ¶ 20,

*PennEnvironment v. Genon Ne. Mgmt. Co.*, 2011 WL 1085885, at *8 (W.D. Pa.

Mar. 21, 2011).

    The 2017 average permit limit for boron in the Landfill's permit is 4.12 mg/l

and is based on meeting the 3.1 mg/l water quality standard. PSMF ¶ 21, 2023

NPDES Permit Fact Sheet at 36, Ex. H. Since the effective date for the NPDES

limits on boron (February 1, 2020), Republic's average boron concentrations have

been consistently above 10 mg/l and as high as 31 mg/l, more than seven times

higher than the permit limit. PSMF ¶ 21, Doc. #24, pp. 4-11 (lines 110-419).

Plaintiff's members therefore have a reasonable concern that those discharges may

pose a risk to their health.

Per- and polyfluoroalkyl substances (PFAS) are toxic to human health at very low concentrations. PADEP has set drinking water standards for PFOS at 18 parts per trillion (ppt) and PFOA at 24 ppt. PSMF ¶ 22, PADEP, *Safe Drinking Water PFAS MCL Rule* (Jan. 14, 2023), at 7, Ex. R. In March 2023, Republic discharged 2300 ppt of PFOS and 540 ppt of PFOA. PMSF ¶ 22, Ex. F at 12. Plaintiff's members risk inhaling or drinking those chemicals if they contact Creek water while wading, swimming, tubing, or drinking well water. Plaintiff has therefore demonstrated injury-in-fact to its members.

Traceability "may be established by showing that a defendant has 1) discharged some pollutant in concentrations greater than allowed by its permit 2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that 3) this pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs." *Keystone,* 520 F. Supp. 3d at 632-33, *quoting Powell Duffryn*, 913 F.2d at 72. Republic has discharged amounts of boron and osmotic pressure into Kreutz Creek that exceed its permit limits and amounts of PFAS that are not authorized for discharge. Plaintiff's members have reasonable concerns that these pollutants can cause or contribute to the adverse effects they may experience from their use and enjoyment of that Creek, including loss of wildlife biodiversity, aesthetic impairment, and potential health effects.

As to redressability, the injunctive relief and the civil penalties sought by Plaintiff are more than likely to redress their injuries because imposing monetary sanctions will "deter future violations as well as promote immediate compliance." *PennEnvironment,* 744 F. Supp. 2d at 481 (citing *Powell Duffryn*, 913 F.2d at 73; *Laidlaw*, 528 U.S. at 185-86). In *Laidlaw*, the Supreme Court squarely held that civil penalties provide redress to citizen suit plaintiffs where the violations are ongoing at the time of the complaint. "It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description." 528 U.S. at 185-86.

Plaintiff also meets the three requirements for representational standing. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). First, at least one of their members has standing to sue in his or her own right. Second, the organizational purposes are germane to the interests sought to be protected. PSMF ¶ 15, Evgeniadis Decl., ¶¶ 2-3, Ex. E. Third, because Plaintiff is only seeking injunctive and declaratory relief and not monetary damages, there is no need for the direct participation of the individual members in the action. *Powell Duffryn*, 913 F.2d at 70.

## II.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER REPUBLIC'S PERMIT VIOLATIONS

Plaintiff satisfies the jurisdictional prerequisites for the commencement and prosecution of a citizen suit against Republic. It sent a 60-day notice letter and filed suit more than 60 days thereafter. PMSF ¶ 11, Hecker Decl., ¶¶s 2-3, Ex. I. No federal or state agency has filed a judicial action which has preclusive effect under the CWA. *Id*. ¶ 4. For a state administrative penalty order to be preclusive, it must be issued "under a State law comparable to" § 1319(g) of the CWA. 33 U.S.C. § 1319(g)(6)(A). The COA states that it "is an Order of the [PADEP] authorized and issued pursuant to . . . the [Pennsylvania] Clean Streams Law . . . and the [Pennsylvania] Administrative Code." PSMF ¶ 12, Ex. J at 6. In *Keystone*, this Court held that "the Pennsylvania legal regime here, the Pennsylvania Clean Streams Law, is not 'comparable to' the Clean Water Act's relevant subsection." 520 F. Supp. 3d at 634. The Court based its decision on its finding that "the Clean Streams Law lacks appropriate measures to provide the public with notice and the opportunity to participate in the decision-making at issue." *Id.* at 635. That same flaw infected the COA process in this case.

Even if Pennsylvania's penalty provisions were comparable, the COA does not satisfy the "commencement" and "diligent prosecution" requirements under subparagraph (ii) of § 1319(g)(6). "[A]n administrative action 'commences' at the point when notice and public participation protections become available to the public and interested parties." *Friends of Milwaukee's Rivers v. Milwaukee*

*Metropolitan Sewerage District*, 382 F.3d 743, 756 (7th Cir. 2004). When those protections are absent, a qualified administrative penalty action does not commence and a citizen suit is not barred. *Id.* at 757. PADEP never commenced a qualified administrative penalty action because it failed to provide any notice or public participation.

The COA was also not "diligently prosecuted" under § 1319(g)(6)(A)(ii), for three reasons. First, PADEP allowed Republic's violations to continue for more than five years and set stipulated penalties at a nominal token level that did not deter hundreds of those violations. *Jones v. City of Lakeland*, 224 F.3d 518, 522-23 (6th Cir. 2000) (*en banc*). Second, those penalties are far lower than the costs that Republic avoided by not building the RO system on time, which amounted to a cost savings of $63,047 per month. PSMF ¶ 13, Ex. S, Att. B; Ex. D at 223-26. In contrast, Republic paid a total of only $109,100 in administrative penalties to PADEP for more than five years of violations. PSMF ¶ 12, Doc. #24 at 12-15. *See PennEnvironment v. PPG Indus., Inc.*, 587 F. Supp. 3d 286, 304 (W.D. Pa. 2022) ("because [the COA] bears no relationship to the estimated costs of establishing and maintaining the system, the amount paid by PPG does not suggest that [the COA] meets the standard for deterrence"). Third, PADEP failed to determine Republic's economic benefit from its delayed compliance. *Friends of the Earth v.*

11

*Laidlaw Envtl. Services*, 890 F. Supp. 470, 494, 491-92, 497 (D.S.C. 1995).[1]

Furthermore, Plaintiff has satisfied the jurisdictional standard set forth in *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield*, 484 U.S. 49 (1987). In that case, the Supreme Court held that, to invoke the jurisdiction of the federal courts, citizen plaintiffs must "allege a state of either continuous or intermittent violation--that is, a reasonable likelihood that a past polluter will continue to pollute in the future." 484 U.S. at 57. On remand from the Supreme Court in *Gwaltney*, the Court of Appeals for the Fourth Circuit held that the plaintiffs could establish jurisdiction under this standard (844 F.2d 170, 171-172 (1988)):

> either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.

Furthermore, the Fourth Circuit stated that violations do not cease to be ongoing unless "the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit." *Id*. at 172. The Third Circuit has adopted the Fourth Circuit's standard for proving ongoing violations under *Gwaltney*. *NRDC v.*

---

[1] Even if the COA met all § 1319(g)(6) requirements, it only penalized 416 of the 449 violations alleged by Plaintiff. PSMF ¶ 12, Doc. #24 at 12-15; PSMF ¶ 5, Ex. C. The other 33 unprosecuted violations would not be precluded. It is axiomatic that an unpenalized violation has not been prosecuted at all, much less diligently prosecuted. *Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms*, Civ. No. 97-6073- CV-SJ-6, 2000 WL 220464, at *13 (W.D. Mo. Feb. 23, 2000).

*Texaco Refining & Marketing,* 2 F.3d 493, 501 (3d Cir. 1993). An ongoing

violation is determined at the time plaintiff's complaint is filed. *Id*. at 502.

The present case meets the first jurisdictional test for proving ongoing

violations. Plaintiff's complaint was filed on January 11, 2023. Republic admits

that it exceeded its boron and OP limits in every month from January through April

2023. PSMF ¶ 6, Doc. #24 at 2-11. "[P]roof of one or more post-complaint

violations is itself conclusive" of the ongoing nature of the pre-complaint

violations. *NRDC*, 2 F.3d at 502. This Court therefore has subject matter

jurisdiction over Republic's permit violations.

## III.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO REPUBLIC'S LIABILITY FOR 449 VIOLATIONS OF ITS NPDES PERMIT AND THE CWA

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary

judgment shall be rendered if "there is no genuine issue as to any material fact and

. . . the moving party is entitled to a judgment as a matter of law." It further

provides that summary judgment may be rendered on the issue of liability alone,

although there may be an issue as to the remedy. Here, there are no genuine issues

of material fact as to Republic's liability.

Section 505(a)(1) of the CWA authorizes citizens to bring suit for violation

of any "effluent standard or limitation." 33 U.S.C. § 1365(a). Section 505(f)(6), in

turn, defines "effluent standard or limitation" to include "a permit or condition

thereof issued under Section 402." 33 U.S.C. § 1365(f)(6). Republic's permit limits for boron and OP are therefore federally enforceable in citizen suits.

Enforcement of the CWA is "intentionally straightforward." *United States v. CPS Chemical Co., Inc*., 779 F. Supp. 437, 442 (E.D. Ark. 1991). The CWA imposes strict liability for permit violations. *Powell Duffryn,* 913 F.2d at 73 n. 10. A discharger's culpability or good faith does not excuse a violation. *CPS Chemical*, 779 F. Supp. at 442. A violation of a permit limit by a discharger is an automatic violation of the CWA. *PIRG v. Rice*, 774 F. Supp. 317, 325 (D.N.J. 1991). "[S]ummary judgment on liability under the CWA is therefore appropriate where the undisputed facts show that permit levels are exceeded." *Coalition for a Liveable West Side, Inc. v. NYC Dept. of Environmental Protection*, 830 F. Supp. 194, 198 (S.D.N.Y. 1993).

The Parties' stipulation and Republic's certified self-monitoring reports show that it exceeded its permit limits for boron and OP 449 times between October 2017 and April 2023. PSMF ¶¶ 5-6, Doc. #24 at 1-11; Ex. C. Plaintiff is therefore entitled to summary judgment as to Republic's liability for 449 violations of the CWA.

## IV.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO REPUBLIC'S TEN UNPERMITTED DISCHARGES OF PFAS

The CWA authorizes citizens to bring suit for violation of any "effluent standard or limitation," which is defined to include "an unlawful act under" §

14

301(a) of the CWA. 33 U.S.C. § 1365(a), (f)(1). That subsection prohibits discharges of pollutants without a CWA permit. *Id.* § 1311(a). Thus, the CWA authorizes citizens to sue for unpermitted discharges. *Natural Resources Council of Maine v. International Paper Co.*, 424 F. Supp. 2d 235, 239 (D. Me. 2006). Unpermitted discharges of PFAS are actionable under the CWA. *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1296 (N.D. Ga. 2021); *Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1320 (N.D. Ga. 2022).

Republic's 2017 NPDES permit does not mention PFAS, let alone authorize the Landfill to discharge them. Ex. A. In August 2023, after this action was filed, PADEP drafted a modified NPDES renewal permit that authorizes discharges of PFAS, but the final permit has not yet been issued. The issuance of a modified NPDES permit authorizing a discharge of a pollutant does not negate prior unpermitted discharges of that same pollutant. *Kanawha Forest Coal. v. Keystone WV*, 2:22-CV-00367, 2023 WL 6466210, at *11 (S.D.W. Va. Oct. 4, 2023). Plaintiff is therefore entitled to summary judgment as to Republic's liability for ten days of unpermitted PFAS discharges, in violation of § 301(a) of the CWA.

## CONCLUSION

For these reasons, Plaintiff's motion for partial summary judgment on jurisdiction and liability should be granted.

Respectfully submitted,

/s/ Stephen G. Harvey
Stephen G. Harvey
Michael E. Gehring
E. Kelly Conway
Steve Harvey Law LLC
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103
(215) 438-6600
steve@steveharveylaw.com
mike@steveharveylaw.com
kelly@steveharveylaw.com

James M. Hecker (special admission)
Public Justice
1620 L Street, N.W. Suite 630
Washington, DC 20036
(202) 797-8600 ext. 225
jhecker@publicjustice.net


Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on June 4, 2024, I served a copy of the foregoing document via

the Court's ECF system on the following:

P. Leigh Bausinger
Antoinette M. Snodgrass
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103

/s/ Stephen G. Harvey
Stephen G. Harvey

17