# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### AT HARRISBURG

| | |
|---|---|
| LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC SERVICES OF PENNSYLVANIA, LLC,<br><br>Defendant. | Civil Action No. 1:23-CV-00044-JPW |

**MEMORANDUM OF LAW OF REPUBLIC SERVICES OF PENNSYLVANIA, LLC IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PRE-JULY 2019 OSMOTIC PRESSURE VIOLATIONS**

# **TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................1

II. FACTS .................................................................................................................2

III. STANDARD OF REVIEW .................................................................................5

IV. ARGUMENT ......................................................................................................6

  A. LSRA's Failure to Include Any Pre-July 2019 Effluent Violations in Its Notice of Intent Precludes LSRA from Presenting Evidence of Thirty Pre-2019 Osmotic Pressure Violations..........................................................................6

  B. LSRA's Complaint Cannot Be Constructively Amended to Include Pre-July 2019 Effluent Violations ...............................................................................10

V. CONCLUSION .................................................................................................14

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*Atwell v. KW Plastics Recycling Div.*,
   173 F. Supp. 2d 1213 (M.D. Ala. 2001) ..................................................................9

*Bradley v. Pittsburgh Bd. of Educ.*,
   913 F.2d 1064 (3d Cir. 1990) .................................................................................5

*Brandywine Indus. Paper, Inc. v. Chem. Leaman Tank Lines, Inc.*,
   No. 97-8121, 1998 WL 855502 (E.D. Pa. Dec. 10, 1998) .....................................7

*Evans Prods. Co. v. W. Am. Ins. Co.*,
   736 F.2d 920 (3d Cir. 1984) .................................................................................13

*Fried v. Sungard Recovery Servs., Inc.*,
   900 F. Supp. 758 (E.D. Pa. 1995) ..........................................................................7

*Hunter v. Kennedy*,
   No. 17-7, 2020 WL 3980450 (M.D. Pa. July 14, 2020) ..................................5, 14

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*,
   676 F.3d 318 (3d Cir. 2012) .............................................................10, 11, 12, 13

*McCree v. Se. Pa. Transp. Auth.*,
   No. 7-4908, 2009 WL 166660 (E.D. Pa. Jan. 22, 2009) .................................10, 11

*PennEnvironment v. PPG Indus., Inc.*,
   964 F. Supp. 2d 429 (W.D. Pa. 2013) ....................................................................6

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*,
   50 F.3d 1239 (3d Cir. 1995) ................................................................................7, 8

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007) ................................................................................11

**Statutes, Rules & Regulations**

40 C.F.R. § 135.3 ........................................................................................................6

33 U.S.C. § 1365 .........................................................................................................3

Federal Rule of Evidence 403 ................................................................................6, 14

Federal Rule of Civil Procedure 15 ...........................................................................14

Defendant Republic Services of Pennsylvania, LLC, ("Republic") submits this memorandum of law in support of its Motion *in Limine* to exclude evidence related to any pre-July 2019 effluent violations of osmotic pressure ("OP").

## I.     INTRODUCTION

Plaintiff Lower Susquehanna Riverkeeper Association ("LSRA") is not entitled to seek any penalties based on any pre-July 2019 exceedances of OP because it failed to include these alleged violations as required by law. First, LSRA omitted these alleged violations from its November 2022 Notice of Intent to Sue ("NOI"). LSRA's NOI included 71 specific violations for OP, and 115 specific violations for boron. There is no legal or procedural mechanism to retroactively amend the NOI. Under the Clean Water Act, this alone is fatal to the LSRA's claims. Second, LSRA again excluded these allegations in its January 2023 Complaint, which failed to plead any violations prior to July 2019. LSRA cannot now, after discovery has ended and long after the time to amend pleadings has expired, amend its Complaint to include these new allegations. Furthermore, LSRA cannot now constructively amend its Complaint because the record shows that Republic did not expressly or impliedly consent to litigate any pre-2019 violations. Evidence of any such pre-2019 OP violations must be excluded from introduction at trial as unpermitted by law, irrelevant, and more unfairly prejudicial than probative.

1

## II. <u>FACTS</u>

On January 23, 2017, the Pennsylvania Department of Environmental Protection ("PADEP") issued a National Pollutant Discharge Elimination System ("NPDES") permit to Republic's Modern Landfill ("Modern") for the wastewater discharge point, known as Outfall 001, into Kreutz Creek. *See* Ex. 1 (2017 Permit). The permit was later amended on April 21, 2017 ("2017 Permit"). *Id.* The 2017 Permit included new limits for levels of OP and a "report only" requirement for levels of boron, until limits went into effect for boron in early 2020. *Id.* at RSOPA_00000735–36.

Prior to 2017, Modern had not experienced problems with levels of OP or boron. When Modern began encountering an increase in OP which sometimes exceeded its 2017 Permit OP effluent limits, Republic took immediate action to research and identify the issues causing the exceedances, and develop/design solutions, including installing a reverse osmosis system to treat OP and boron. *See, e.g.*, Ex. 2 at 93:19–23, 94:18–22 (O'Donnell Dep. Tr., Feb. 26, 2024); Ex. 3 at RSOPA_0013080, -83 (Email re Modern LF call today); Ex. 4 at RSOPA_00004011 (Modern Landfill Boron Treatment System Update); Ex. 5 at 2 (2018 Proposal for Consulting and Engineering Services). Republic also worked collaboratively with PADEP regarding Republic's efforts to maintain full compliance with all permit

limits. *See, e.g.*, Ex. 6 (Compliance Timeline, Boron and Osmotic Pressure); Ex. 7 (Email re: Modern Landfill Leachate Plant NOV).

On August 25, 2020, Republic entered into a Consent Order and Agreement ("COA") with PADEP. Ex. 8 (COA). Under the COA, Republic agreed to design and construct upgrades to its wastewater treatment plant on a specific timeline. *Id.* at RSOPA_00000714. The COA also included a list of effluent violations of Modern's 2017 Permit. *Id.* at RSOPA_00000723–25. This list includes effluent violations of OP beginning in April 2018. *Id.* Ted Evgeniadis, the "Riverkeeper" for LSRA, received a copy of the COA executed between Republic and PADEP on September 10, 2020. Ex. 9 (Email re: Modern Landfill Consent Order and Agreement).

More than two years later, on November 2, 2022, LSRA filed its 60-Day Notice of Intent to Sue, as required by the Clean Water Act ("CWA"). Ex. 10 (Notice of Intent); 33 U.S.C. § 1365(b)(1)(A). LSRA alleged that Republic had violated effluent limitations for boron and OP "since July 2019 and continuing to the present." Ex. 10 at 2. As required by the CWA, LSRA also specifically listed dates of alleged effluent violations, with July 31, 2019 as the first effluent violation of OP for which LSRA was giving notice of its intention to file suit. *Id.* at 6. LSRA included a qualifier that when filed, its suit would also address violations "for months subsequent to the most recent month in the attached list." *Id.* at 1. LSRA did not allege in its NOI any

3

violations prior to July 31, 2019 or that it was including unlisted violations prior to that date. *Id.* at 6.

On January 11, 2023, LSRA filed its Complaint. ECF No. 1. Similar to LSRA's allegations in its NOI, LSRA's Complaint included only allegations of Republic's effluent violations for boron and OP "since July 2019 and continuing to the present." *See id.* ¶ 23. Attachment A to LSRA's Complaint is the same list of violations included in LSRA's NOI and does not include any violations prior to July 31, 2019. *See id.* at Attachment A.

The record demonstrates that the pre-July 2019 OP violations were not litigated. First, LSRA sought, and Republic agreed to, a stipulation regarding the relevant exceedances. This Stipulation, drafted by Plaintiff and finalized between the parties, does not include any pre-July 2019 violations. *See* ECF No. 24. Second, during written discovery, LSRA did not indicate any intent to litigate pre-July 2019 violations. In response to Republic's interrogatory requesting LSRA list each instance where it alleges Republic is in violation of its permit, LSRA listed, without qualification, only violations occurring after July 2, 2019. *See* Ex. 11 at 10–20; *see also id.* at 24–25 (listing only violations after August 27, 2020 as instances where Republic exceeded its NPDES limits for OP and boron and failed to pay the stipulated penalties). Finally, Republic objected to LSRA's discovery requests if there was an implication that it sought information regarding pre-2019 violations. For example,

4

LSRA requested documents "from 2016 to the present" and Republic objected on the basis that this request sought evidence of violations prior to the allegations in the Complaint. *See* Ex. 12 at RFP 3; *see also id.* at RFP 9 (objecting to a request for documents from 2017 to the present because the request was not limited to the time frame relevant to LSRA's claims and agreeing to produce only documents from 2019 to the present).

Despite making a deliberate choice not to include pre-July 2019 OP violations in both its NOI and Complaint, and making no attempt to rectify these omissions during the litigation, LSRA nonetheless sought Summary Judgment on thirty pre-2019 OP violations. *See* ECF No. 47 at 18–19.

### III. <u>STANDARD OF REVIEW</u>

Prior to trial, a court may rule on a motion *in limine* involving the admissibility of evidence at trial. *See Hunter v. Kennedy*, No. 17-7, 2020 WL 3980450, at *1 (M.D. Pa. July 14, 2020) (Wilson, J.) (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)) (Exhibit A). Motions *in limine* "narrow the evidentiary issues for trial and . . . eliminate unnecessary trial interruptions." *See id.* Relevant evidence is generally admissible at trial; however, a court may preclude relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or

needlessly presenting cumulative evidence. *See id.* (citing Fed. R. Evid. 403). In those situations, a motion *in limine* should be granted and the evidence excluded.

IV. **ARGUMENT**

    A. **LSRA's Failure to Include Any Pre-July 2019 Effluent Violations in Its Notice of Intent Precludes LSRA from Presenting Evidence of Thirty Pre-2019 Osmotic Pressure Violations**

LSRA made a conscious choice not to include any pre-2019 violations in its Notice of Intent. Accordingly, LSRA failed to notify Republic, the Administrator of the Environmental Protection Agency ("EPA"), and PADEP of its intent to sue for 30 pre-2019 OP violations, despite being statutorily required to do so under the CWA. This is fatal to LSRA's inclusion of these violations at trial.

Federal regulations promulgated under the CWA prescribe the contents of a notice letter, mandating that the notice letter **must** include:

> [S]ufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, *the date or dates of such violation*, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a) (emphasis added). The CWA's notice provision is a "jurisdictional prerequisite;" if a plaintiff fails to comply with this provision, the claims should be dismissed. *See PennEnvironment v. PPG Indus., Inc.*, 964 F. Supp. 2d 429, 465 (W.D. Pa. 2013).

6

The purpose of these requirements is to provide recipients with timely and effective notice. *See Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1249 (3d Cir. 1995). In construing the sufficiency of a notice letter, courts consider whether the content of the notice letter allows recipients to adequately identify the basis for the citizen's complaint. *See id.* Thus, a notice letter does not conform to the notice requirements under the CWA if it "fails sufficiently to inform its recipients of the violations upon which a citizen intends to bring suit." *See id.* at 1248.

Although a notice letter need not identify specific dates of the alleged violations, the notice letter must include a "discrete" and "specific" time frame for alleged violations. *See Brandywine Indus. Paper, Inc. v. Chem. Leaman Tank Lines, Inc.*, No. 97-8121, 1998 WL 855502, at *4 (E.D. Pa. Dec. 10, 1998) (citing *Fried v. Sungard Recovery Servs., Inc.*, 900 F. Supp. 758, 765 (E.D. Pa. 1995)) (Exhibit B). Without specifying any other dates in its notice of intent to sue, a citizen is entitled to sue only for violations occurring "during and after" this discrete time frame. *See Hercules, Inc.*, 50 F.3d at 1250. "[A] notice letter which includes a list of discharge violations, by parameter, provides sufficient information for the recipients of the notice to identify violations of the same type (same parameter, same outfall) occurring *during and after* the period covered by the notice letter." *Id.* (emphasis added).

Here, LSRA seeks to present evidence for violations it could have—but chose not to—include in its NOI, all of which occurred *before* the time frame listed. LSRA's NOI sets out a discrete time frame, explicitly stating that it intended to sue only for violations "since July 2019" and lists only violations occurring after July 31, 2019. *See* Ex. 10 at 2–7. LSRA qualifies its list only with respect to later time periods, stating its suit "will also address any violations that may be reported for months *subsequent to* the most recent month" listed, September 2022. *See id.* at 1, 3–7 (emphasis added). If LSRA wanted to add a similar qualifier for any violations reported for months *prior to* July 31, 2019, it could have included one. Rather, nothing in LSRA's NOI indicates an intent to sue for pre-July 2019 violations. Third Circuit precedent is clear that LSRA can only sue for violations occurring "during and after" the time frame set out in its Notice of Intent—July 31, 2019 to present. *See Hercules, Inc.*, 50 F.3d at 1250.

This is not a case where LSRA did not have actual knowledge of the pre-July 2019 OP violations before submitting its NOI. On September 10, 2020—over two years before LSRA submitted its Notice of Intent—PADEP emailed Evgeniadis, acting on behalf of LSRA as "Riverkeeper," attaching a copy of the COA executed between Republic and PADEP. *See* Ex. 9; Ex. 8. The COA lists pre-2019 violations. *See* Ex. 8 at RSOPA_00000723. While this was enough to give LSRA the information needed to list pre-July 2019 information, LSRA additionally could have

8

sought Modern's Discharge Monitoring Reports ("DMRs") prior to sending its NOI. LSRA cites the DMRs as evidence of the 30 pre-2019 OP violations. However, Modern's DMRs are public and LSRA could have asked PADEP informally for this information (as it did to obtain the COA) or submitted a formal Right to Know request to receive these reports. Thus, LSRA was not only aware that pre-2019 violations existed, but also had the specific dates of each—and could have included them in its NOI, but did not. *See Atwell v. KW Plastics Recycling Div.*, 173 F. Supp. 2d 1213, 1225–26 (M.D. Ala. 2001) ("Either [plaintiff] had the information necessary to provide proper notice or he did not. If he did . . . he should have included as much specific information as he had . . . . If [he] did not have enough information, he should have waited until he did before he gave his notice of intent to sue . . . .").

LSRA argues that Republic had "fair notice" of the 30 pre-July 2019 OP violations because Republic's DMRs included evidence of the 30 pre-2019 OP exceedances. *See* ECF No. 47 at 18–19. However, Republic's "actual knowledge" of the exceedances is irrelevant and does not excuse or permit LSRA's decision not to include the violations in its Notice of Intent. *See Atwell*, 173 F. Supp. 2d at 1225–26. Indeed, knowledge of an exceedance is not the same as knowledge of a specific legal claim arising out of those exceedances; by LSRA's logic, anyone who ever reported an exceedance on a DMR would effectively be "on notice" of any and all possible

9

citizens suits, rendering the entire NOI process obsolete. By choosing not to include any pre-July 2019 violations in its Notice of Intent, LSRA failed to notify Republic, EPA, and PADEP of its intent to sue for thirty pre-2019 OP violations, and all evidence and testimony regarding these pre-2019 violations must be excluded as impermissible evidence, irrelevant, and more unfairly prejudicial than probative.

### B. LSRA's Complaint Cannot Be Constructively Amended to Include Pre-July 2019 Effluent Violations

Putting aside the fact that LSRA's Notice of Intent fails to include any pre-July 2019 violations—which, for that reason alone precludes such evidence—LSRA contends that its Complaint can be constructively amended to include thirty pre-2019 OP violations. This argument fails because Republic did not expressly or impliedly consent to litigate pre-July 2019 violations.

Courts may only find a complaint constructively amended when an issue not raised by the pleadings is tried by the parties' express or implied consent. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 326–27 (3d Cir. 2012); *McCree v. Se. Pa. Transp. Auth.*, No. 7-4908, 2009 WL 166660, at *9 (E.D. Pa. Jan. 22, 2009) (Exhibit C). In determining whether a party impliedly consents to litigate an unpled claim, a court considers whether (1) the parties recognized that the unpled issue entered the case; (2) the evidence that supports the unpled issue was introduced without objection; and (3) a finding of implied consent prejudiced the

opposing party's opportunity to respond. *Liberty Lincoln-Mercury, Inc.*, 676 F.3d at 326–27. None of these factors are met here.

Plaintiff cites *McCree* in support of its arguments to constructively amend the Complaint. In *McCree*, the Court found the complaint could be constructively amended to include the plaintiff's intentional discrimination claim under the Americans with Disabilities Act because the parties were on notice of the claim for over a year, litigated the claim, and addressed the merits of the claim in their summary judgment briefing. 2009 WL 166660, at *10. Thus, the court found that there was no question that the defendant had any doubts about the existence of the claim and impliedly consented to litigate it. *See id.*

As an initial matter, *McCree* is not analogous to the facts or law of this dispute. *McCree* involved a claim under the Americans with Disabilities Act, which does not contain any pre-suit notice requirement. *See, e.g.*, *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 845 (9th Cir. 2007) ("[T]he ADA does not require . . . that a plaintiff give notice of intention to sue before filing suit . . . ."). Here, the CWA requires a citizen file a notice of intent to sue, the contents of which are statutorily prescribed. Therefore, it is irrelevant whether LSRA's Complaint even can be constructively amended when LSRA failed to give the statutorily required notice.

Putting aside procedural fatalities, however, there is nothing in the record that suggests Republic either expressly or impliedly consented to litigate pre-July 2019

11

OP violations. Rather, the record demonstrates that the pre-July 2019 OP violations were not litigated. First, LSRA failed to include any pre-2019 violations in its Notice of Intent and its Complaint. *See* Ex. 10; ECF No. 1; *Liberty Lincoln-Mercury, Inc.*, 676 F.3d at 326–27 (finding there was no evidence the parties recognized unpled claims entered into litigation because neither the complaint nor any other court proceedings clearly referenced the claims). Second, LSRA sought, and Republic agreed to, stipulate to the relevant exceedances. *See* ECF No. 24 (this Stipulation, initially drafted by Plaintiff and finalized between the parties, does not include any pre-2019 violations).

Further, written discovery shows a lack of intent to litigate pre-2019 violations. In response to Republic's interrogatory for LSRA to list each instance where it alleges Republic is in violation of its permit, LSRA listed, without qualification, only violations occurring after July 2, 2019. *See* Ex. 11 at 10–20; *see also id.* at 24–25 (listing only violations after August 27, 2020 as instances where Republic exceeded its NPDES limits for OP and boron and failed to pay the stipulated penalties).

Finally, Republic objected to LSRA's requests if there was an implication that it sought information regarding pre-July 2019 violations. For example, LSRA requested documents "from 2016 to the present" and Republic objected on the basis that this request sought evidence of violations prior to the allegations in the

12

Complaint. *See* Ex. 12 at RFP 3; *see also id.* at RFP 9 (objecting to a request for documents from 2017 to the present because the request was not limited to the time frame relevant to LSRA's claims and agreeing to produce only documents from 2019 to the present). Through Republic's objections, LSRA was on notice that Republic disagreed with any inclusion of pre-2019 violations. *See Liberty Lincoln-Mercury, Inc.*, 676 F.3d at 326–27 ("[T]here is implied consent to litigate an issue if there is no objection to the introduction of evidence on the unpleaded issue . . . ." (cleaned up)). If LSRA wanted to include those violations in this lawsuit, it should have done so in its November 2022 NOI and January 2023 Complaint.

Republic had no way of recognizing it was litigating any pre-2019 violations when LSRA chose not to include these violations in its NOI, its Complaint, the parties' Stipulation, and its discovery responses. Republic did not impliedly consent to litigate thirty pre-2019 OP violations and would suffer significant prejudice if the Court were to retroactively include these claims in this Action. Republic would be forced to litigate violations LSRA failed to indicate any intent to sue for until now, after discovery concluded and long after amendments to pleadings were permitted. Republic already put LSRA on notice of its objections to such evidence. Thus, requiring Republic to litigate pre-2019 violations would deny Republic a fair opportunity to defend against pre-2019 violations and to offer additional evidence. *See Evans Prods. Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 924 (3d Cir. 1984) (explaining

the principal consideration for a court in determining leave to amend under Federal Rule of Civil Procedure 15(b) is whether the opposing party was denied a fair opportunity to defend and offer additional evidence).

LSRA had information on the pre-2019 violations but chose not to include any of them in its NOI and cannot now attempt to constructively amend its Complaint to include violations Republic did not consent to litigating. For these reasons and those articulated above, any evidence of 30 pre-2019 OP violations is irrelevant and should be excluded under Federal Rule of Evidence 403 because it is prohibited by CWA to be included in a penalty analysis and is more unfairly prejudicial than probative. *See, e.g.*, *Hunter*, 2020 WL 3980450, at *4 (granting the party's motion *in limine* and excluding evidence not at issue in the case because it would be confusing to the jury and unduly prejudicial).

## V. CONCLUSION

WHEREFORE, for the foregoing reasons, Republic respectfully requests the Court grant its Motion *in Limine* and enter an Order precluding evidence and testimony related to pre-July 2019 OP effluent violations.

Dated: September 4, 2024                 Respectfully Submitted,

                                             /s/ P. Leigh Bausinger
Bonnie A. Barnett
P. Leigh Bausinger (*pro hac vice*)
Antoinette M. Snodgrass (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Fax: (215) 988-2757
Email: bonnie.barnett@faegredrinker.com
Email: leigh.bausinger@faegredrinker.com
Email: antoinette.snodgrass@faegredrinker.com

*Attorneys for Defendant*
*Republic Services of Pennsylvania, LLC*

# CERTIFICATE OF SERVICE

    I hereby certify that on this date I caused to be served upon Plaintiff the foregoing Memorandum of Law in Support of the Motion *in Limine* of Republic Services of Pennsylvania, LLC to Exclude pre-July 2019 osmotic pressure effluent violations by causing it to be electronically filed and sending it via electronic mail to Plaintiff's attorneys:

| | |
|---|---|
| Stephen G. Harvey<br>Michael E. Gehring<br>E. Kelly Conway<br>Steve Harvey Law LLC<br>1880 John F. Kennedy Blvd.<br>Suite 1715<br>Philadelphia, PA 19103<br>steve@steveharveylaw.com | James M. Hecker<br>Public Justice<br>1620 L. Street, N.W. Suite 630<br>Washington, D.C. 20036<br>jhecker@publicjustice.net |

*Attorneys for Plaintiff*
*Lower Susquehanna Riverkeeper Association*

| | |
|---|---|
| Dated: September 4, 2024 | Respectfully Submitted,<br><br>/s/ P. Leigh Bausinger<br><br>*Attorneys for Defendant*<br>*Republic Services of Pennsylvania, LLC* |