## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION, | : | Civil No. 1:23-CV-00044 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| REPUBLIC SERVICES OF PENNSYLVANIA LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

This Clean Water Act citizen suit is proceeding to a bench trial scheduled to begin on February 23, 2026.  In anticipation thereof, the parties each filed pretrial motions.  Defendant, Republic Services of Pennsylvania LLC ("Republic"), filed three motions in limine.  Plaintiff, Lower Susquehanna Riverkeeper Association ("LSRA"), filed a request for judicial notice.  For the reasons that follow, the court will deny each motion in limine and the request for judicial notice.

### BACKGROUND[1]

LSRA initiated this action based on allegations that Republic was violating its National Pollutant Discharge Elimination Systems Permit ("NPDES Permit"). (Doc. 1.)  At summary judgment, Republic stipulated that it was liable for 419 exceedances of its NPDES Permit between July 2019 and April 2023.  *Lower*

---

[1] The court assumes familiarity with facts of this case and, therefore, provides an abbreviated summary of this case's background.

*Susquehanna Riverkeeper Ass'n v. Republic Servs. of Pa. LLC*, No. 23-cv-00044, 2025 WL 976694, at *9 (M.D. Pa. Mar. 31, 2025).  Accordingly, the court granted summary judgment to LSRA on the issue of Republic's liability for these exceedances.  *Id.*  As to relief, the court determined that a genuine issue of material fact existed concerning whether Republic should be assessed a civil penalty pursuant to 33 U.S.C. § 1319(d).  *Id.* at *10.  Following summary judgment, the court scheduled a bench trial date certain.  (Doc. 70.)

On January 8, 2026, LSRA supplemented certain of its previously made discovery responses in two important respects.  First, LSRA supplemented two interrogatory responses and produced approximately 500 pages of documents so as to disclose certain Total Maximum Daily Load ("TMDL") water monitoring data collected by government agencies that had occurred in Kreutz Creek.[2]  LSRA had previously thought this monitoring data was irrelevant to this case, because it thought the monitoring did not measure the pollutants Republic released.  (Doc. 92, p. 5.)  In December 2025, however, LSRA learned that the TMDL monitoring measured "specific conductance," which LSRA claims is correlated to osmotic

---

[2] The documents produced are not part of the record.  LSRA's supplemental interrogatory responses are located at Doc. 90-2, pp. 3, 5.

pressure, one of the NPDES Permit values that Republic exceeded.  (*E.g.*, Doc. 93, p. 3.)[3]

Second, LSRA supplemented another interrogatory response to indicate that it would be seeking "injunctive relief requiring [Republic] to pay monies into a remedial fund to mitigate the harm caused to Kreutz Creek by it past violations of its water-quality based permit limits."  (Doc. 90-2, p. 4.)

Republic timely filed three motions in limine, two of which concern LSRA's recent disclosures.  (Docs. 76, 87, 89.)  These motions are fully briefed.  (*See* Docs. 77, 82, 88, 90, 91, 92, 98.)  In partial response to Republic's motions, LSRA filed a request for judicial notice of six enumerated facts.  (Doc. 93.)  Republic responded to LSRA's request in one of its reply briefs on its motions in limine, Doc. 98, as ordered by the court.  (Doc. 97.)

## JURISDICTION

The court has subject matter jurisdiction over this Clean Water Act citizens suit pursuant to 28 U.S.C. §§ 1331, 1365.

## DISCUSSION

Prior to trial, courts may rule on motions in limine involving the admissibility of evidence.  Such motions "narrow the evidentiary issues for trial and . . . eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of*

---

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

*Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Here, Republic asks the court to prohibit LSRA from (1) pursing the aforementioned injunctive relief; (2) introducing certain opinions contained in the rebuttal expert report ("Shefftz Expert Report") written by economist Jonathan S. Shefftz ("Shefftz"); and (3) introducing evidence concerning the TMDL water monitoring in Kreutz Creek. On the other hand, LSRA asks the court to take judicial notice of six enumerated facts seemingly related to the same TMDL water monitoring. The court considers each request in turn.

### A. Republic's Request to Prohibit LSRA's Request for Injunctive Relief

LSRA is requesting injunctive relief directing Republic to pay monies into a fund for the benefit of remediation projects in Kreutz Creek. (Doc. 90-2, p. 4.) Republic argues that LSRA should be precluded from doing so for three reasons. First, LSRA did not request this relief in its complaint. (*See* Doc. 90, pp. 10–11.) Second, LSRA failed to disclose that it was seeking this relief as required by Rule 26(a) and, therefore, should be barred from seeking it pursuant to Rule 37(c)(1). (*Id.* at 10.) Third, Republic contends that the court has already determined that the impending bench trial is about calculating a "civil penalty," which by law cannot be paid into a remedial fund. (*Id.* at 13.) None of these reasons are persuasive.

### 1. Rule 54(c)

Republic's first argument does not take Rule 54(c) into account.  That rule states, "final judgment," other than a default judgment, "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  Under Rule 54(c), so long as a plaintiff has stated a claim for relief, "it is the court's obligation to grant the relief to which the prevailing party is entitled whether it has been specifically demanded or not."  *USX Corp. v. Barnhart*, 395 F.3d 161, 165 (3d Cir. 2004) (quoting *Kirby v. U.S. Gov't, Dep't of Hous. & Urban Dev.*, 745 F.2d 204, 207 (3d Cir. 1984)).  This means that injunctive relief can be awarded even when not specifically demanded.  10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2664 (4th ed. Sept. 2025 update) ("[W]ith the merger of law and equity, specific or injunctive relief may be awarded even though damages were prayed for and vice-versa." (footnotes omitted)).

Republic makes several references in its briefing to the relief sought by LSRA as being a new "theory of relief."  (*E.g.*, Doc. 90, p. 10.)  It is true that Rule 54(c) does not permit a plaintiff to assert a new theory of relief—*i.e.*, when a plaintiff seeks not "to vary relief but to add judgments based on new claims." *USX Corp.*, 395 F.3d at 165; *accord Cooper v. Garman*, No. 19-cv-02227, 2024 WL 4043505, at *5 (M.D. Pa. Sept. 4, 2024).  LSRA is doing nothing of the sort.  Its

theory of relief remains the same: Republic violated the Clean Water Act 419 times between July 2019 and April 2023.  All LSRA is doing is attempting to vary the relief it obtains for Republic's Clean Water Act violations.  Rule 54(c) does not preclude LSRA from doing so.  *Compare Cooper*, 2024 WL 4043505, at *4–6 (finding plaintiff was not asserting new theory of relief when he sought compensatory damages, even though he only pleaded a request for punitive damages), *with Marshall v. Abdoun*, No. 22-cv-0010, 2023 WL 2588166, at *10–12 (E.D. Pa. Mar. 20, 2023) (affirming bankruptcy court's determination that Rule 54(c) did not permit plaintiff to seek damages for an unpleaded intentional-infliction-of-emotional-distress claim, even though the appropriateness of emotional-distress damages under state statutory law had been an issue in the case).[4]

## 2. Rule 26(a) and 37(c)(1)

Republic's second argument ambiguously does not identify which specific provision of Rule 26(a) that LSRA purportedly violated.  Given the argument's substance, it appears Republic is arguing that LSRA violated Rule 26(a)(1)(A)(iii).

---

[4]  Republic cites several Third Circuit cases in support of the proposition that a party may not inject "a new form of relief on the eve of trial where the underlying basis for such relief was not disclosed."  (Doc. 98, pp. 6–7.)  The cited cases are inapposite, because none of them involve a party trying to seek a different form of relief.  Rather, they all involved one party attempting to amend the complaint to add additional causes of action.  *See Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923–24 (3d Cir. 1990); *Clark v. Township of Falls*, 890 F.2d 611, 624 (3d Cir. 1989); *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1202–03 (3d Cir. 1989).

That rule requires a party to disclose, "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Reliance on this rule is misplaced, because the relief at issue is an equitable remedy, not a previously undisclosed category of damages. The court is persuaded by the determination made by other district courts that equitable remedies are not subject to disclosure under Rule 26(a)(1)(A)(iii). *See City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-cv-01362, 2020 WL 4589716, at *3 (D. W. Va. Aug. 10, 2020) ("[B]ecause abatement is as an equitable remedy within the court's discretion to fashion, abatement is not subject to the computation requirements of Rule 26."); *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 405 F. Supp. 3d 981, 1002 (D. Kan. 2019) (determining the equitable remedy of disgorgement was not subject to Rule 26(a)(1)(A)(iii) disclosure); *United States v. Stinson*, No. 6:14-cv-1534, 2016 WL 8488241, at *7 (M.D. Fla. Nov. 22, 2016) (finding that disgorgement was not "a damages remedy" and therefore fell outside the scope of Rule 26(a)(1)(A)(iii)); *Scott v. City of Phoenix*, No. 09-cv-0875, 2011 WL 1085992, at *4 (D. Ariz. Mar. 24, 2011) (concluding that "declaratory judgment, injunctive relief, and nominal damages" need not be disclosed under Rule 26(a)(1)(A)(iii)).

Even assuming, *arguendo*, that Rule 26(a)(1)(A)(iii) compelled LSRA to disclose injunctive relief, Rule 37(c)(1) would not bar pursuit of the type of relief

that LSRA seeks.  Rule 37(c)(1) prohibits a party that has failed to disclose

information under Rule 26(a) from using that information at trial, "unless the

failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Here,

LSRA's pursuit of injunctive relief is harmless to Republic.  This is because LSRA

has offered to stipulate that it (1) will request payment into a remedial fund as an

alternative remedy to civil penalties, Doc. 90-5, p. 2; and (2) will "limit its request

under either remedial alternative to the same dollar amount" that was demanded as

a civil penalty.  (Doc. 92, p. 10.)  The court interprets LSRA's position to be that it

will limit its request for injunctive relief to whatever amount the court determines

is an appropriate figure after consideration of the factors listed in 33 U.S.C. §

1319(d).  Under these circumstances, Republic would be paying the same amount,

if any, whether as a civil penalty or as equitable relief.  This result does not cause

Republic harm.

### 3.  Purported Judicial Determination about the Scope of Trial

In advancing its third argument, Republic reads too much into the court's

summary judgment memorandum opinion.  It is true that the court referred to the

upcoming trial as the "penalty phase" of litigation and previewed the method it will

"use to calculate the appropriate civil penalty in this case."  *Lower Susquehanna*

*Riverkeeper Ass'n*, 2025 WL 976694, at *11.  But context matters.  At that time,

the court was not called upon to decide what remedies LSRA could and could not

pursue at trial.  Republic mistakenly interprets the court's language to be deciding a question not presented.  At most, the language indicates that calculation of a civil penalty will be an issue at trial, not that a civil penalty is the only remedy that LSRA may seek or receive.[5]

The court is mindful that, pursuant to Third Circuit precedent, a "civil penalty" under the Clean Water Act must be paid to the United States Treasury. *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 82 (3d Cir. 1990).  If the court were to impose a "civil penalty," it would be improper to order such penalty to be paid into a remedial fund.  *Id.*  The court is not running afoul of that precedent, however, by simply permitting LSRA to seek payment of funds to a remedial fund *instead of* payment of a civil penalty to the Treasury.  *See id.* ("[A] court may fashion injunctive relief requiring a defendant to pay monies into a remedial fund, if there is a nexus between the harm and the remedy.").

---

[5] Another portion of the court's summary judgment opinion—although not mentioned by either party in the present briefing—is also worth contextualizing.  The court explained that the Clean Water Act's "mandatory language demonstrates that once a citizen plaintiff establishes an ongoing violation of a parameter at the time the complaint is filed, the court is obliged to assess penalties for all proven violations of that parameter."  *Lower Susquehanna Riverkeeper Ass'n*, 2025 WL 976694, at *6 (quoting *Nat. Res. Def. Council, Inc. v. Texaco Refining & Mktg., Inc.*, 2 F.3d 493, 503 (3d Cir. 1993)).  The court quoted this language in discussing whether Republic's post-complaint compliance mooted LSRA's claims for a civil penalty.  *Id.*  The quote, too, should not be construed as a judgment about the availability of remedies other than a civil penalty in this case.

For the foregoing reasons, the court will not preclude LSRA from seeking injunctive relief in the form of Republic paying monies into a remedial fund. Thus, Republic's motion in limine on this issue will be denied.  (Doc. 89.)

## B.  Republic's Request to Exclude Shefftz Expert Report

Republic objects to the admissibility of certain portions of the Shefftz Expert Report and related testimony.[6]  Republic's challenges can be grouped together into two broad categories.

### 1.  Purported Legal Opinions and Policy Advocacy

The first category consists of supposedly legal opinions about how the Clean Water Act's penalty provision, 33 U.S.C. § 1319(d), should be interpreted and policy arguments in support of those interpretations.  The arguments to which Republic objects generally relate to the "economic benefit" factor of § 1319(d).[7]  A representative example follows:

> Economic benefit does not represent compensation to a plaintiff as in a typical damages calculation for a tort case.  Instead, economic benefit is the minimum amount that a defendant must pay as a civil penalty so as to return that defendant to the financial position it would have been in had it complied in a timely manner.  Therefore, were the economic benefit not to be fully disgorged in the form of a civil penalty payment,

---

[6] LSRA has not yet stated whether or not it will attempt to introduce the Shefftz Expert Report at trial.  The report does not seem to appear on LSRA's exhibit list.  Nonetheless, for the purpose of resolving Republic's motion, the court will assume that LSRA will attempt to introduce it at trial.

[7] The Clean Water Act does not define "economic benefit."  *United States v. Righter*, No. 08-cv-0670, 2010 WL 4977046, at *2 (M.D. Pa. Dec. 2, 2010).

> then the residual financial gain could be construed as representing an unfair competitive business advantage to a defendant.
>
> A civil penalty insufficient to disgorge the entire amount of the probability-adjusted economic benefit figure would fail to make a defendant financially indifferent between compliance versus noncompliance.

(Doc. 77-2, p. 12.)

Republic is correct that an expert witness may not testify as to legal opinions. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). This prohibition is especially important in jury trials, *Lozano v. City of Hazelton*, 241 F.R.D. 252, 256 (M.D. Pa. 2007), where expert legal opinions could "usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley Inv. Grp.*, 455 F.3d at 217. Such concerns are not as present "in the case where the factual findings are to be made by the Court." *Suter v. Gen. Accident Ins. Co. of Am.*, 424 F. Supp. 2d 781, 793 (D.N.J. 2006). Even still, the court should not permit an expert to testify at a bench trial as to legal conclusions and analysis. *See Lozano*, 241 F.R.D. at 256.

Republic is incorrect, however, that the Shefftz Expert Report is advancing legal opinions. Opinions on how the court should think about "economic benefit," although wrapped in legalistic language, do not represent legal conclusions. They are opinions about what is economically necessary to achieve the Clean Water Act's well-settled goal of financially deterring violators. *See United States v. Mun.*

11

*Auth. of Union Twp.*, 150 F.3d 259, 263 (3d Cir. 1998) ("It is apparent . . . that the goal of the economic benefit analysis is to prevent a violator from profiting from its wrongdoing."); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1141 (11th Cir. 1990) ("Insuring that violators do not reap economic benefit by failing to comply with the statutory mandate is of key importance if the penalties are to successfully to deter violations."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 890 F. Supp. 470, 491 (D.S.C. 1995) ("A penalty serves as a successful deterrent only if potential violators believe that they will be worse off by not complying with the applicable requirements.").  This is precisely a topic about which one would expect an economist to opine.

The same is true for the opinions about adjusting the economic-benefit analysis based on the probability of detection and enforcement of the violation.  As an example of this principle, the Shefftz Expert Report theorizes:

> [I]f Defendant in this case knew that for every similar violation the probability of ultimately paying a penalty that recaptured economic benefit was only 25 percent (i.e., one-fourth), then the economic benefit result would have to be multiplied by a factor of four for penalty-setting purposes.  As the probability of detection-prosecution-payment declines, then the amount of money proportionately increases that would make a defendant indifferent between compliance versus noncompliance.

(Doc. 77-2, p. 10.)  Opinions about the role probability adjustments can play in achieving financial deterrence are economic in nature, not legal.[8]  *See Laidlaw*, 890 F. Supp. at 492 n.16 (describing how probability adjustments factor into "the economic theory of deterrence").

The court recognizes that Republic objects to the relevancy of this probability-adjustment theory.  (Doc. 91, p. 8.)  This objection is seemingly well founded.  LSRA represents that Shefftz offers no opinion on whether probability adjustments are necessary in this case.  (Doc. 82, p. 9.)  Given LSRA's acknowledgment, it is unclear whether LSRA will introduce evidence concerning probability adjustments at trial.  The court, therefore, need not address the relevancy issue at this time.  Republic may renew its relevancy objection at trial if the need arises.

### 2. Quotation from Previous Expert Report and Citations to Previous Cases

The second category consists of a quotation from a previous expert report that Shefftz authored in another case and citations to cases that have apparently adopted Shefftz's economic-benefit calculations.  (Doc. 77-2, pp. 14–16.) Republic argues that these references represent an improper attempt to bolster his

---

[8] Republic faults Shefftz for using two hypotheticals in advancing his opinions.  (Doc. 77, pp. 12, 15.)  This objection is meritless.  These hypotheticals are helpful illustrations of financial deterrence in action and how, in Shefftz's opinion as an economist, probability adjustments generally can achieve financial deterrence.  (*See* Doc. 77-2, p. 11–12.)

credibility, which, if allowed, would unfairly prejudice Republic since Shefftz makes no mention of cases in which courts declined to adopt his economic-benefit calculation. (Doc. 91, pp. 9–12.) This argument in unavailing. First, Republic cites no authority that suggests an expert report is *per se* barred from including citations to previous cases adopting the expert's findings. Second, Republic overstates the danger of undue prejudice. The court is capable of making credibility determinations as the factfinder in this case without being influenced by what other courts have decided. In any event, though, Republic is not precluded from responding to Shefftz's citations, if they are admitted, with citations to court opinions that have rejected Shefftz's economic-damages calculation and conducting a cross examination on this issue.

Under these circumstances, it is not appropriate to strike this portion of the Shefftz Expert Report or any other challenged portion. Accordingly, the court will deny Republic's motion in limine addressing this issue. (Doc. 76.)

## C. Republic's Request to Exclude Evidence Concerning TMDL Water Monitoring in Kreutz Creek

The court has several questions it wants to ask counsel about this issue. Therefore, the court will defer ruling on Republic's motion in limine on this issue, Doc. 87, until after the court has posed its questions to counsel at the final pretrial conference, which is scheduled for February 20, 2026.

**D. LSRA's Request for Judicial Notice**

Pursuant to Federal Rule of Evidence 201(b)(2), LSRA requests that the court take judicial notice of six facts that seemingly relate to TMDL water monitoring in Kreutz Creek. (Doc. 93, pp. 1–3.) Rule 201(b)(2) permits courts to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). LSRA argues that the six facts in question satisfy Rule 201(b)(2) because they are located on government websites. (Doc. 93, p. 3.) LSRA is correct that courts can take judicial notice of information on government websites. *E.g.*, *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *Smith v. Radian Settlement Servs., Inc.*, 717 F. Supp. 3d 415, 421 n.36 (M.D. Pa. 2024); *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003).[9] Even so, this court will not judicially notice facts before it can determine that they are relevant facts. *See Al-Hasani v. Sec'y U.S. Dep't of Homeland Sec.*, 81 F.4th 291, 301 (3d Cir. 2023) (declining to take judicial notice of irrelevant facts); *Kamden-Ouaffo v. Hucarro*, No. 2:16-cv-8859, 2017 WL 11724428, at *2 (D.N.J. Jan. 13, 2017) (same). LSRA has not articulated why these facts are relevant to this case. The court will not guess why

---

[9] This does not necessarily mean that the court is concluding that facts are not subject to reasonable dispute merely because they appear on a governmental website. The court makes no determination at this stage about whether the facts LSRA wants noticed are subject to reasonable dispute under Rule 201(b)(2).

they are so, especially outside the context of trial and when Republic argues that the facts are irrelevant.  (Doc. 98, p. 12.)  Accordingly, the court will deny LSRA's request for judicial notice without prejudice.

CONCLUSION

For the foregoing reasons, the court will (1) deny with prejudice Republic's motion in limine concerning LSRA's request for injunctive relief, Doc. 89; (2) deny without prejudice Republic's motion in limine concerning the Shefftz Expert Report, Doc. 76; (3) defer ruling on Republic's motion in limine concerning the TMDL water monitoring information, Doc. 87, until the final pretrial conference; and (4) deny without prejudice LSRA's request for judicial notice, Doc. 93.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: February 19, 2026

16